[S. F. No. 2843.   Department One.—June 11, 1904.]

## ELIE A. GASQUET, Appellant, v. CELINA R. PECHIN et al., Respondents.

PROMISSORY NOTE—DELIVERY AND ACCEPTANCE—SUPPORT OF FINDING.—
A note is not delivered when the payee refuses to accept it; and
no action can be maintained upon an undelivered note.  In an action
upon a promissory note a finding that it had never been delivered
is sustained by evidence that the payee had intended a gift of the
money to the maker of the note, who wished to consider the gift
as a loan, but the payee refused to have anything to do with the
note which the maker had signed, and that the maker had deposited
the note in a bank without the payee's knowledge or consent, with
the intention to make deposits in the name of the payee to be
credited in the note.

ID.—EVIDENCE—BANK'S RECEIPT FOR NOTE TO DISTRIBUTEE OF PAYEE'S
ESTATE—RECITAL.—The bank's receipt for the note to plaintiff as
distributee of the deceased payee, reciting that it had been left in
its keeping by the deceased payee during his lifetime, was properly
excluded from evidence, where there is nothing to show that the
contents of the receipt were known to the defendant.

ID.—DEPOSITION OF DEFENDANT—IMPEACHING EVIDENCE—HARMLESS ER-
ROR.—Where the original wording of the deposition of the defendant
was different from its final wording, as corrected before her sig-
nature, the original wording may be shown for the purposes of
impeachment, as a statement in conflict with her testimony at the
trial upon the question of her indebtedness to the deceased; but
where it appears that the subject-matter of the impeaching evidence
had no bearing upon the question of the delivery of the note, upon
which the case depends, the error in refusing to allow the contradic-
tory statement was not prejudicial.

APPEAL from an order of the Superior Court of the
City and County of San Francisco denying a new trial. Frank
J. Murasky, Judge.

The facts are stated in the opinion of the court.

Stoney & Stoney, for Appellant.

A. Ruef, for Respondents.

SHAW, J.—This is an appeal from an order denying the
plaintiff's motion for a new trial.  The action was upon a

promissory note dated October 1, 1894, payable to the order of Horace Gasquet. The payee died January 21, 1896, and the plaintiff has succeeded as sole legatee to the assets of his estate, including the note in question. The answer put in issue the execution of the note, and alleged that it was without consideration. The court found in favor of both these defenses, and these findings are asserted to be unsupported by the evidence.

The evidence discloses that the note was the result of a very unusual and remarkable transaction. The deceased, Horace Gasquet, and his family, and the father and mother of the defendant, Mrs. Pechin, had been very intimate and friendly ever since and previous to said defendant's birth. They were all of French birth, and lived many years as neighbors in Crescent City, Del Norte County, in this state. The deceased, it seems, was a man advanced in years and of considerable means, and had during the latter years of his life taken a deep and kindly interest in the welfare of Mrs. Pechin, and had frequently expressed a desire and intention to give her money to a considerable amount. She had been somewhat reluctant to accept his assistance, but finally consented, and, at his request, they met for that purpose at the office of her brother, Mr. Carrou, in San Francisco. Mrs. Pechin resided with her mother in San Francisco, and had been for a number of years, and was at the time mentioned, a teacher in the public schools of the city. At the meeting he handed her an order on the French bank, together with his pass-book, the order being blank as to the amount to be paid, and told her to fill the blank left for the amount with such sum as she needed or wanted and get the money from the bank. She received the order and pass-book and left the office. After about twenty minutes, during which time she was considering the matter, she returned to the office, where Horace Gasquet and Mr. Carrou had remained, and told Mr. Gasquet that she did not like to accept an order with the amount payable not inserted, and that she thought forty-five hundred dollars would be enough. Mr. Gasquet was rather impatient at what he seemed to consider her unnecessary scruples, and said that he wanted to give her any amount she would take up to the sum on deposit in the bank in his name as shown by the pass-book. He handed the order to the brother and requested

him to fill in the blank with the sum mentioned by her, which
he then did, and returned the order to the defendant. She
then said to Mr. Gasquet that she would make him a note for
the money. He again became impatient and told her that
he did not want any note. She said, "Well, you have been
a great many times in very good circumstances and have lost
all you have had, and you might get there again, and some
day you might be very glad to have a little of this money,
and if I can pay it, I think I shall do it while you live, and
if you die it will be another matter." He said, "Well, if I
die it is all right. It is all right anyhow." She said, "Yes, I
suppose it is, but it would suit me better." He still objected
strongly and lost his temper, and then said that if she insisted
on giving a note to do as she pleased, but that he wanted her
to understand that he did not want to be bothered with it,
and that she should never talk to him of it again. She then
wrote the note in his presence, and while she was writing it
he said, "Do what you want with it, you are writing it, do
what you please with it, I want nothing to do with that." He
would not take the note, and she then handed it to her brother
and asked him to go to the San Francisco Savings Union, a
savings-bank in San Francisco, and get a pass-book in the
name of Mr. Gasquet, saying that she wanted to put whatever
money she was going to pay in that bank in his name. She
then left the office. The next day her brother went to the
San Francisco Savings Union to open the account in the name
of Horace Gasquet, as requested by her, and was told that
it could not be done unless Mr. Gasquet would come to the
bank and write his signature. The brother then saw Mr.
Gasquet and informed him of the matter. Gasquet objected
strongly to having anything to do with it, but finally consented
to go and give his signature. When they reached the bank
they were informed that some money must be deposited in
order to open the account. Mr. Gasquet flatly refused to
deposit any money, and upon the cashier saying that a dollar
would do for the opening of the account, the brother himself
advanced that sum, and Mr. Gasquet wrote his signature.
The brother then handed the note to the cashier, who put it
in an envelope indorsed "Note of Mrs. Pechin," and placed it
in a tin box in the bank, where it remained until after the
death of Mr. Gasquet. There is no direct evidence that Mr.

Gasquet ever agreed that the bank should hold the note for him. He said nothing whatever during the transaction at the bank, except by way of objection, protest, and refusal to have anything to do with the plan. The note was not mentioned by either of the persons present. The only act he did to manifest consent to any part of the affair was to give his signature so that deposits could be made in his name. When the brother would begin to talk about the matter he would protest and say that he wanted nothing to do with it. A few weeks afterward Mrs. Pechin discovered that she needed five hundred dollars more, and wrote to Gasquet stating that her first estimate was not sufficient by that amount and asking for an additional five hundred dollars. He sent her a check for the five hundred dollars inclosed in an envelope, without any letter or other explanation. She made a note for the five hundred dollars, payable to his order, and deposited it with the San Francisco Savings Union along with the first note. Afterwards, during his life, she made payments of several amounts at different times, by depositing the sums to his account as thus opened. On making each payment she wrote to him informing him of the fact, but he never at any time answered any of these letters. She saw him again before his death, but he never mentioned or referred to the matter in any way. Her testimony in regard to her intention is somewhat inconsistent. From her actions and words it would be inferred that she was unwilling to accept the money as a gift and insisted on taking it as a loan. But upon the direct question being put to her she testified: "I accepted it as a gift from the very beginning, and I went off, as I told you, and that was a gift; and when I came back I concluded that was not a very good way to do, and then I had the amount stated on the order and then I stated, 'Now I shall give a note.' " Gasquet did not while he lived draw any of the money thus deposited in his name, nor by any positive act recognize or signify his acceptance of the deposit for his benefit.

It is urged on behalf of appellant that there must be an acceptance in order to constitute a legal gift, and that when Mrs. Pechin took the money, at the same time insisting on making a note and refusing to accept it as a gift, it thereby necessarily became a loan and constituted a sufficient consideration for the note. There are many cases of gifts of real

estate, or other classes of property, where the transfer is made
by means of a conveyance, or where the delivery of possession
of the thing given is not immediate, in which it is held that
an unequivocal acceptance of the conveyance, either expressed
or implied, or a consent to the method of delivery by which
the gift is manifested or effected, is necessary to pass the
title to the subject of the gift. There are also cases holding
that where a gift is by means of a check or order on a bank
it is revocable at any time before actual payment by the bank,
either by the direct act of the donor or by his death. None
of these cases are precisely applicable to the case at bar. Here
the order was duly paid by the bank, and there was no revoca-
tion made or intended. Unquestionably the title to the money
passed to the defendant. The real question is whether, from
the conduct of the parties, it must or must not necessarily be
considered as a loan. We are cited to no authority upon the
exact question. Where one party accepts the money offered
as a gift, but declares an intention to repay it, or so much as
she can repay during the life of the donor, and endeavors
to thrust upon the other a note for the amount, which the
other not only refuses to take, but, with equal persistence,
refuses to consider the transfer otherwise than as a gift, it
is difficult to say what should be the precise legal character
of the transaction. We do not feel disposed to decide this
question, inasmuch as we think the finding that the note was
not delivered is sustained by the evidence, and is sufficient
to justify the judgment.

The deceased refused to take the note from Mrs. Pechin.
She tried to evade the effect of this refusal by delivering the
note to her brother to be left in the bank where she could
make payments by deposits in the name of the deceased to be
credited on the note. If there was conduct on his part which
must necessarily be construed as an acceptance of this ar-
rangement with respect to the note, so that the bank must
be considered as the custodian of the note for him, then
manifestly the note must be considered as delivered to the
bank for him, the delivery would be good, and, if there was a
sufficient consideration, the note would be valid. But the
evidence must be construed so far as possible in support of
the findings. There was no positive act of the deceased show-
ing an intention to accept the note as his property. He ex-

pressly declared his intention to have nothing to do with it. While she was writing it he declared that if she insisted on giving a note she could do as she pleased, but he wanted her to understand that he did not want to be bothered with it, and that he wanted nothing to do with it. This statement might possibly be construed as a consent to the giving of the note to him, but it is not necessarily to be so interpreted. It is at least equally susceptible of the meaning that while he conceded that she might give the note,—that is, write it out and sign it, so far as her action with respect to it was concerned,—on the other hand, he would not accept it, or have anything to do with it. The delivery of the note would not be complete without his acceptance, any more than the gift of the money to her would be complete as a gift without her acceptance. We must presume that the court construed the declaration as a refusal to accept the note, and we think that construction was more in accord with the surrounding circumstances than the contrary would be. There was nothing in his subsequent conduct that was necessarily inconsistent with this declared intention, while there was much that is consistent with it. He consented to give his signature to the bank in order that she might make deposits to his credit. But the evidence does not show that he was cognizant of the delivery of the note to the bank. There is not a word to show that such delivery was called to his attention. And if the matter had been fully known to him it is probable, from the plain manner of man he was, that he would not have understood that the possession of the bank with his consent might have the legal effect of constituting a delivery to him so as to make the note binding in the hands of his successors. If so, the intent to accept it would not necessarily be imputed from such consent. The natural construction to be placed on his actions with respect to this bank account is, that he was willing, in order to satisfy what he regarded as an overnice delicacy on her part, that an account might be opened, and that she might make such payments to him as she was able to make during his life, and credit the same on a note, or in any other manner she wished, but that he did not intend in any way to recognize the note as a valid obligation belonging to him. The transaction was highly creditable to both parties, and there is nothing in it which makes it necessary for this court to overrule the decis-

ion of the court below as to the effect of equivocal evidence, and thereby take away the benefit which the deceased manifestly intended to confer on Mrs. Pechin by giving it a legal effect which he never intended it to have.

Some alleged errors of law remain to be considered. There was no error in excluding the receipt for the note given by the plaintiff to the San Francisco Savings Union after the distribution of the note to him from the estate of Horace Gasquet. The bank was in no sense the agent of the defendant to declare for her that the note had been "left in its keeping by Horace Gasquet during his lifetime," as the receipt declares, and there is nothing to show that the contents of the receipt were known to her.

Prior to the trial Mrs. Pechin had given a deposition relating to the case, in which she testified that at the interview with the deceased at the time he gave her the check or order she said to him: "You have many times in your life lost money, and it seems to me I ought to give you a note, and I ought to pay whatever I can towards this." And that in regard to the subsequent payments she testified thus: "I thought I would do it from a sentiment of delicacy, I suppose to pay what I *had received from Mr. Gasquet,* if I could." The plaintiff on the trial offered to show that the deposition had been corrected by her before it was signed or filed, and that in her original testimony before correcting it she had added the word "debt" to the part first quoted, so that the last clause would read thus: "And I ought to pay whatever I can towards this *debt,*" and that the last clause of the latter portion of the deposition quoted originally stood thus: "I suppose to pay what I *owed* if I could." The proper foundation was offered for this testimony, but the court refused to allow it, assigning as the reason for the ruling that the witness was bound only by the terms of the deposition as finally corrected before signing. This ruling was erroneous and the reason given fallacious. If her original statement was as claimed, and was inconsistent with the testimony given on the trial on a material point, it could be proven for the purposes of impeachment, regardless of the occasion upon which the original statement was made, provided, of course, that it was not privileged. But while the ruling was incorrect we do not think that it could have caused substantial injury, such

as to require a reversal of the order.  At most it could only go to show that at the time she gave the deposition she considered that she owed a debt to the deceased.  She appears to have been of the same mind during portions. of the trial, and, in any event, it was a mere matter of opinion on her part. The testimony offered might have had some slight effect on the question of the consideration of the note, a question which we have not assumed to decide, and which was not necessary to support the judgment for the defendant.  It has no bearing on the question of the delivery of the note, which is the point on which the case depends.  There is no doubt that she intended that it should be legally delivered, and that was fully shown by her testimony, so that the admissions in question would not aid the plaintiff as to her intention.  The question as to sufficiency of the delivery depended solely upon the intention of the deceased to accept it, and these admissions made by her long afterward could have no weight whatever upon that subject.  There are no other questions that require discussion.

The order denying the new trial is affirmed.

Angellotti, J., McFarland, J., Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.