[Civ. No. 305. First Appellate District.—January 3, 1907.]

# F. M. ROSE, Appellant, v. BARTLETT DOE, Respondent.

SALE OF PLEDGED BONDS—CREDIT OF SURPLUS ON DEBT TO PURCHASER—ESTOPPEL OF PLEDGOR.—Where the owner of bonds pledged as collateral security for his notes was present at the sale thereof, at which the purchaser gave his check to pay the notes, and credited the surplus on other indebtedness of such pledgor to the purchaser, to which no objection was made, and the pledgor by his conduct at that time and afterward became estopped to dispute the validity of the sale, he is entitled to no relief by way of accounting on the basis of its alleged invalidity.

ID.—SUPPORT OF MATERIAL FINDINGS—IMMATERIAL FINDINGS UNSUPPORTED—REVERSAL NOT WARRANTED.—Where the evidence, though conflicting, is sufficient to support the finding as to the validity of the sale, and all other findings material to the judgment, even if it be conceded that some other findings are unsupported, which are immaterial, and would not impair the judgment if the findings were otherwise, the want of evidence to support them would not warrant a reversal of the order denying a new trial.

ID.—FINDINGS CONTROLLING CONTRARY OPINION AT TRIAL.—The correctness of the findings of fact is to be determined upon a consideration of the entire evidence in the case, together with such inferences of fact as the trial court might properly draw from them, and is not in any way impeached by the fact that at some stage in the course of the trial the court may have given or expressed a contrary opinion.

ID.—AMENDED ANSWER—NEW DEFENSES—DISCRETION.—The discretion of the court was properly exercised in allowing the defendant, after denial of his motion for a nonsuit, to amend his answer by setting up special defenses other than those presented in the original answer. Its discretion is best exercised when it tends to bring about a trial on the merits of the controversy between the parties.

ID.—GENERAL OFFER OF PROOF.—A mere general offer of proof, without having the witness in court, or if he is present, without putting a question to him in such form as to give an opportunity for an objection, is a sufficient ground for refusal of the offer.

ID.—GROUNDS OF OBJECTION TO OFFERED PROOF NOT IN RECORD—PRESUMPTIONS AGAINST ERROR.—Where the grounds of the objection to the offered proof do not appear in the record, error in the ruling of the court against it is not to be presumed; and it will be assumed that any valid objection was made that could be made against the receiving of the offered evidence.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a new trial. J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

W. T. Baggett, for Appellant.

John Flournoy, and Mich. Mullany, for Respondent.

HARRISON, P. J.—Action for an accounting. The cause was tried by the court, and judgment rendered in favor of the defendant. A motion by the plaintiff for a new trial was denied, and from this order he has appealed. The facts constituting the controversy between the parties, as disclosed at the trial and shown by the findings of the court, are as follows:

The plaintiff's assignor, J. S. Emery, made two promissory notes to the defendant—one bearing date September 15, 1896, for $33,319, and the other bearing date December 16, 1896, for $14,950, each payable six months after its date. As collateral security for the payment of the first note he deposited with the defendant forty-two bonds of the Blue Lakes Water Company of $1,000 each, and as collateral security for the payment of the other note twenty-three similar bonds of the same corporation. Each of these pledges was accompanied by an instrument in writing, authorizing the defendant, in case the note for which the security was given should not be paid at its maturity, to sell the pledged property at public or private sale, at any place, with or without any previous notice to the pledgor or any notice whatever of said sale. Neither of the notes having been paid at its maturity, the defendant, on March 20, 1899, gave written notices to Emery that on April 3, 1899, at 11 o'clock A. M. of that date, he would sell the property so pledged at private sale at his office in San Francisco (designating the street and number thereof). Pursuant to these notices the defendant, on April 3, 1899, sold said bonds to Charles F. Doe for the sum of $52,350. There was then due on the principal of said promissory notes of Emery the sum of $47,350, and the said Charles F. Doe gave to the defendant his check for that amount, and the

defendant gave credit therefor to Emery, and at the same time canceled and marked "Paid" the aforesaid notes of Emery. At the time of said sale, and for more than two years prior thereto, Emery was indebted to said Charles F. Doe upon four promissory notes theretofore executed by him to said Doe, and said indebtedness then amounted to $10,180. After giving to the defendant his check for the aforesaid amount of $47,350 Charles F. Doe applied $5,000 of the sum for which he had purchased the bonds as a credit upon the said indebtedness of Emery to himself. Emery, together with his legal counsel, were present at the sale of said bonds, and heard and saw all that took place at the time of said sale, and knew of the application by the defendant and Charles F. Doe of the respective portions of the sum for which the bonds were sold as credits upon his indebtedness to them as aforesaid, but he did not, nor did either of them, either then or at any time prior to the commencement of this action, make any objection to the manner of making said sale, or to the price at which they were sold, or to the manner in which the price was credited to Emery, or inform or notify the defendant that Emery claimed that the sale was in any respect defective or invalid, or that he elected to treat it as defective or invalid.

In addition to the bonds so purchased by him, Charles F. Doe was the owner of fifty other similar bonds of the same corporation, and after his said purchase and prior to April 25, 1899, he sold to the defendant sixty-five of said bonds, and on April 25, 1899, the defendant and said Charles F. Doe entered into an agreement with John Flournoy for the sale of the one hundred and fifteen of said bonds held by them, in which it was provided, among other things, that said Flournoy would endeavor to sell said bonds at the highest price obtainable therefor, and should receive from the defendant and Charles F. Doe one-half of whatever sum might be received upon their sale above the sum of $93,800, that being estimated as the approximate cash outlay by them for said bonds. This agreement was prepared and drafted by T. C. Judkins, who was then and had been for a long time next prior thereto, and was for a long time next subsequent thereto, the attorney and counsel of Emery, representing and acting for him and attending to his legal business, and said Judkins presented the said in-

strument to the defendant and to Charles F. Doe, and induced them and each of them to enter into and sign it. Prior to April 25, 1900, Emery was informed by the defendant of the said agreement with Flournoy, and was also informed of its terms and provisions, and after being so informed entered into an agreement with Flournoy, by which they agreed that if the one hundred and fifteen bonds owned by the defendant and Charles F. Doe should be sold to a purchaser procured by Emery, Flournoy ·would pay and deliver to Emery, and Emery would receive and accept as his commission for procuring said purchaser, whatever surplus above $5,000 should be coming to Flournoy under his aforesaid agreement with the defendant and Charles F. Doe, and that Flournoy should retain such sum of $5,000 as his share of said commissions.

On April 25, 1900, the one hundred and fifteen bonds were sold to purchasers procured by Emery and Flournoy for the sum of $109,250, and on April 27th Flournoy received from the defendant and Charles F. Doe the commission to which he became entitled under his aforesaid agreement with them, and paid over and delivered to Emery a portion thereof pursuant to the said agreement between Emery and himself.

Upon these facts the court held that the plaintiff was not entitled to any relief.

Other matters were embraced in several of the above transactions between the parties, but as they do not affect the relations between them as shown by the aforesaid statement, a statement of their character is omitted.

The pivotal point of the controversy between the plaintiff and the defendant is the sale of the bonds by the defendant April 3, 1899—the plaintiff contending that, by reason of the mode in which the sale was conducted, it was invalid, and that his ownership of the bonds was not affected thereby, and much of the argument of his counsel is directed to this point. The court has, however, found in favor of the validity of the sale, and we cannot say that the evidence is insufficient to sustain its decision. But even if its findings on this issue should be disregarded, we are of the opinion that the evidence before the court, and its findings thereon, respecting the conduct of Emery at the time of the sale, his silence and acquiescence therein, his unexplained delay in making any

objection thereto, and his conduct thereafter in connection with the bonds, and in reference to their sale in 1900 under the agreement between the defendant and Flournoy, his agreement with Flournoy to accept a compensation for effecting their sale, and his acceptance of such compensation after their sale, and their delivery from the defendant to the purchaser, if not technically a ratification of the sale by the defendant in 1899, operated as an estoppel against Emery, and the plaintiff as his assignee, from disputing its validity, and justified the court in refusing the plaintiff any relief. The evidence in the record is quite voluminous, and in many material points is conflicting and quite contradictory. It would serve no useful purpose to recount it at length, but it suffices to say that it justifies all the findings of the court which are material for sustaining its judgment; and even if it be conceded that some of the other findings are without sufficient evidence to support them, as claimed by the appellant, yet, inasmuch as these findings do not countervail the findings which are material to the judgment and which are fully justified by the evidence, and would not impair the judgment if contrary findings had been made, the want of evidence to support them would not warrant a reversal of the order denying a new trial.

At the trial the court directed the parties to first introduce their evidence relative to the sale of the bonds on April 3, 1899, so that the issue upon the validity of that sale might be first determined, and at the close of the plaintiff's case the defendant moved for a nonsuit upon the ground that the evidence did not show that the sale was invalid. The court took the matter under advisement, and at a subsequent day denied the motion, filing an opinion in connection therewith, in which it stated that the sale was invalid, and ordered that the cause be set down for a further hearing. Upon the final submission of the cause the court filed its findings of fact, in which it held that the sale was valid, and it is contended by the appellant that the opinion of the court given upon denying the motion for a nonsuit should prevail over its findings of fact.

The correctness of the findings of fact is to be determined upon a consideration of the entire evidence in the case, to-

gether with such inferences of fact as the trial court might properly draw therefrom, and is not in any way impeached by the fact that at some stage in the course of the trial the court may have given or expressed a contrary opinion. The findings of fact which are filed with the clerk constitute the decision of the court upon the issues in the cause, and their correctness is to be measured by the evidence in the cause, and not by any statement or opinion made during the progress of the trial.

After a motion for a nonsuit had been denied, the court, upon a motion of the defendant, gave him leave to file an amended answer. The plaintiff excepted to this ruling, and now urges that it was error for the court to allow the defendant to amend his answer by setting up special defenses other than those presented in the original answer. The original answer is not contained in the record before us, and we are unable to make any comparison of the defenses therein with those upon which the cause was tried; but even if the fact be as claimed by the appellant, the court did not err in permitting the amendment. (*Stringer* v. *Davis,* 30 Cal. 321; *Guidery* v. *Green,* 95 Cal. 630, [30 Pac. 786] ; *Gould* v. *Stafford,* 101 Cal. 32, [35 Pac. 429] ; *Crosbie* v. *Clark,* 132 Cal. 8, [63 Pac. 1022] ; *McDougall* v. *Hulet,* 132 Cal. 154, [64 Pac. 278].) In determining whether to allow a defendant to file an amended answer much is left to the discretion of the court, and, as in the case of setting aside a default, this discretion is best exercised when it tends to bring about a judgment upon the merits of the controversy between the parties. It can very rarely happen that the allowance of an amendment, for the purpose of setting up a defense upon the merits that has not been previously pleaded, would be held erroneous. As was said in *Stringer* v. *Davis,* 30 Cal. 318, where the trial court had denied the defendant leave to amend his answer upon the ground, as alleged by it, that, if allowed, a recovery by the plaintiff might be defeated, "such would seem to be a very good reason why the amendment should be allowed."

After the testimony on the part of the plaintiff relating to the validity of the sale of the bonds by the defendant on April 3, 1899, had been presented, the record recites the fol-

lowing proceedings: "Here counsel for the plaintiff offered to prove that Mr. Emery did not know, and could not have known of the various details respecting the matters and things done at the sale, so far as the giving of the check and its return was concerned, until about the time of the institution of the suit. The court sustained the objection thereto, and the plaintiff duly excepted."

The record does not show the nature or grounds of the objection; and as error in the ruling of the court is not to be presumed, for the purpose of sustaining its ruling if any valid objection could have been made to receiving the evidence offered it will be assumed that such objection was made. The objection may have been upon the ground that there was no means at hand of making the proof. A mere "offer" without having the witness in court, or, if he be present, without putting a question to him in such form as to give an opportunity for an objection, would be a sufficient ground for the ruling. In *Biddick* v. *Kobler*, 110 Cal. 191, [42 Pac. 578], it was said: "A mere general 'offer' to prove a variety of things without producing the witness or evidence whereby they are to be proved, or segregating the different items, is an improper method of presenting offered evidence, and should not be allowed unless by consent of parties." This offer of proof was made after the court had stated that, for the purpose of deciding that issue, "I do not see how any further evidence could be of any assistance to the court at all. All these other things would come in later." And under this statement of the court a sufficient ground for the objection and for the ruling of the court would have been that the matters offered were not within the issues which the court had directed to be first tried and which were then before it for trial; or that the testimony offered was not a part of the plaintiff's case, but was in anticipation of what might be shown in defense of the action. In such case the plaintiff would not be precluded from introducing the evidence at a subsequent stage of the trial, but such subsequent offer was not made.

Many other rulings of the trial court are assigned as error, the greater part of which are, however, upon matters not essential to the merits of the case, and in none of which a

different ruling would have affected the decision, and for this reason need not be further considered in this opinion.

The order denying a new trial is affirmed.

Cooper, J., and Hall, J., concurred.