[Civ. No. 2564.  Fourth Dist.—April 24, 1941.]

LEONE LEWIS et al., Respondents, v. WESTERN TRUCK LINE (a Corporation) et al., Appellants.

[Civ. No. 2565.  Fourth Dist.—April 24, 1941.]

NORMA GIBBS, as Administratrix, etc., Respondent, v. WESTERN TRUCK LINE (a Corporation) et al., Appellants.

Harvey, Johnston & Baker, Betts & Garrison and John A. Loomis for Appellants.

W. C. Dorris, Claflin, Dorsey & Campbell for Respondents in Civ. No. 2564.

Borton, Petrini, Conron & Borton for Respondent in Civ. No. 2565.

GRIFFIN, J.—This appeal involves two separate actions brought against appellants Western Truck Line, a corporation, hereinafter called the corporation, and its employee, Rudolph Maurin, as defendants, which actions were consolidated for trial. The evidence introduced at the consolidated trial is applicable to both actions, with the exception of the evidence relating to the measure of damages.

These actions arose out of an accident on the highway involving two automobiles, and a truck and trailer owned by the corporation and driven by appellant Maurin, as a result of which Ernest Lewis and Jack Gibbs were killed. The first action was brought by Leone Lewis, the wife of the deceased Ernest Lewis, individually on her own behalf, and as guardian *ad litem* on behalf of the four minor children of Ernest Lewis, for damages resulting from the death of Ernest Lewis. The other action was brought by Norma Gibbs, the wife of the deceased Jack Gibbs, as administratrix of his estate, to recover damages sustained as the result of the death of Jack Gibbs. These appeals are taken from the judgment entered on the verdict of the jury in favor of the plaintiff in the Lewis case for $25,000, and from the judgment similarly entered in the Gibbs case in the sum of $10,000. Prior to appeal, motions for new trial were made, argued, and by the trial court denied.

Appellants contend that these judgments must be reversed and a new trial granted because of claimed prejudicial error occurring during the course of the trial. It is claimed that (1) the court refused to permit the defendants to introduce into evidence certain answers made by some of the plaintiffs in their depositions and later corrected by them at the time of the signing of the depositions. It is argued that these answers, before corrected, were admissible either by way of impeachment or as constituting admissions of the parties; (2) that the court gave to the jury certain instructions on points of law which were admittedly proper statements of the law, but it is claimed they were not applicable to the facts of these cases and that they thereby tended to confuse the jury and tended to leave in the minds of the jurors

an erroneous impression of the principles of law properly to be considered by them in arriving at a verdict.

The accident out of which the actions here on appeal arose consisted of two collisions, one collision following shortly after the other. It happened at about 10:25 o'clock P. M. on the evening of December 24, 1938, on the highway running between Mojave and Lancaster, at a point about 1½ miles south of Mojave. This highway approaching Mojave runs slightly upgrade in a general northerly direction and is an improved, paved highway, 15 feet in width, divided in the center with a white line, and has an oiled shoulder 3 to 4 feet in width on each side thereof. At the place where the accident happened and for a considerable distance to the north and south the road is straight. A short time prior to the accident the Gibbs Chevrolet sedan, driven by the decedent Jack Gibbs, with the decedent Ernest Lewis in the right front seat as a passenger, left Mojave traveling in a southerly direction. Following a short distance behind the Gibbs car was an Oldsmobile coach belonging to the Lewis family and driven at the time by the minor respondent Theodore Lewis. Riding in the front seat of the Lewis automobile with the driver were the respondents Norma Gibbs and Leone Lewis, who were the wives of the two men riding ahead in the Gibbs Chevrolet. As these two cars approached the scene of the accident there was at the same time approaching from the opposite direction, i. e., traveling uphill in a northerly direction, an automobile driven by C. D. Arrowsmith. Some distance behind (which distance is quite in dispute), and following the Arrowsmith car, also proceeding in a northerly direction, was a truck and trailer belonging to the appellant corporation, driven by the appellant Maurin. He was admittedly in the course of his employment by the corporation. The truck and trailer were of a size and capacity capable of carrying 17 tons over and above the weight of the equipment. The entire unit was 58 feet over all. Each was equipped with air brakes. The brakes of the trailer were made effective by means of a hand-brake,—the brakes of the truck by means of a foot-brake. Ten pneumatic tires were on the truck and twelve were on the trailer. As the Arrowsmith car, traveling in a northerly direction on the east side of the highway near the center line, and the Gibbs Chevrolet, traveling in a

southerly direction on the west side were about to pass each other the Gibbs car apparently struck a ''rut'' and suddenly swerved to a point somewhere near the white center line of the roadway and sideswiped the Arrowsmith automobile. This contact between the cars caused both of them to proceed onward on the highway, but out of control. The Arrowsmith car proceeded a distance of approximately 80 feet northerly and to the west side of the road before stopping. At the same time the Gibbs Chevrolet went skidding and careening for a distance of about 65 feet in a southeasterly direction over to the east edge of the highway and stopped partly on the east shoulder thereof. Appellants' oncoming truck had been following behind the Arrowsmith car. The distance the truck was behind the Arrowsmith car is quite material as bearing on the doctrine of last clear chance. The facts in this regard are quite in dispute, and will be discussed later in this opinion. The truck ran into the Gibbs car and pushed it in a northeasterly direction about 56 feet, up against a bank off the east shoulder of the highway, crushing and killing the two occupants of the Gibbs car. The truck driver was uninjured.

Respondents Leone Lewis, Theodore Lewis and Norma Gibbs testified at the trial that when the sideswipe collision occurred they were riding in the Lewis car a distance of about 100 feet behind the Gibbs car; that the Gibbs car after colliding with the Arrowsmith car careened over to the east edge of the pavement and stopped for two or three seconds before the second collision with the truck occurred, and that the truck, at the time the Gibbs car came to a stop after the sideswipe collision, was still about a block away from the spot where the Gibbs car had stopped. It was stipulated that a block was about 300 feet.

Appellant Maurin testified that shortly before and at the time of the sideswipe collision he was driving his truck at a distance of approximately 100 feet behind the Arrowsmith automobile at about 28 miles per hour well to the east side of the paved highway and partly on the east shoulder; that he turned his truck to the right, applied the foot-brake and reached for the hand-brake lever which controlled the trailer brake and that it was then that the force of the impact between the truck and the Gibbs car threw him entirely out of control of the truck; that no appreciable interval of time

elapsed between the sideswipe collision and the second collision with the truck; and that the Gibbs car was still in motion at the time of the second collision.

The Lewis case was based on the theory that the appellant company through its driver was negligent in the operation of the truck and trailer; that such negligence was the proximate cause of the death of Ernest Lewis, the passenger in the stricken car; that the latter was not himself guilty of negligence; and that any negligence on the part of the driver Gibbs could not be imputed to him.

The Gibbs case was founded on the doctrine of last clear chance. It was Mrs. Gibbs's theory that Jack Gibbs had placed himself in a position of danger from which he could not extricate himself with the exercise of due care, and that Maurin when made aware of his plight still had a clear chance to avert the accident but negligently failed to avail himself of it.

Appellants, on the other hand, contend that the facts were such that the accident was inevitable in so far as the driver Maurin was concerned in that he had no reason to anticipate that the sideswipe collision between the Gibbs car and the Arrowsmith car would occur or to anticipate that the Gibbs car would careen onto the wrong side of the road directly into his pathway, and that as soon as he observed that such was the situation he used all means available to him to stop his truck and avoid the collision.

Respondents contend that the record fully establishes many acts of negligence in addition to the failure of appellant Maurin to exercise reasonable care under the doctrine of last clear chance in this, that: (1) the driver Maurin was exceeding the lawful rate of speed; (2) he was following the other car too closely; (3) he was driving off the paved portion of the highway; (4) though he saw the danger more than 100 feet away he failed to apply all his brakes; (5) he veered over into the path of the oncoming car; (6) he failed to keep his equipment under control; and (7) the driver jumped from the truck at least 100 feet before it collided with the Gibbs car and negligently allowed it to crash into the Gibbs car unattended and uncontrolled.

From the record it appears that prior to trial the depositions of Theodore Lewis, Leone Lewis and Norma Gibbs, were taken but were not corrected and signed until the day

of trial. The answers to certain questions were set forth in a deposition referred to in the record and hereinafter discussed, which answers were claimed to have been given originally and were at variance with the answers given as corrected. Some of the general questions in the deposition propounded to Theodore Lewis, who was not called as a witness for respondents but was called by appellants under section 2055 of the Code of Civil Procedure, were: "Q. How far were you away from the truck when the truck was pushing the car in which your father was riding, along?" (Indicated original answer): "A. About a block". (Indicated corrected answer): "A. About 100 feet". "Q. And how far apart was the car in which your father was riding, the Gibbs car, and the truck when you commenced to stop your car?" (Indicated original answer): "A. The truck had hit them." (Indicated corrected answer): "A. About a block oı more". "Q. How far away was the truck from the Gibbs car when you first saw it?" (Indicated original answer): "A. Oh, I don't know, about—pretty close." (Indicated corrected answer): "A. About three or four hundred feet." Similar changes were made by respondents' witness Leone Lewis, with an exception in reference to this question: "Q. How long had the Gibbs car come to a stop before the truck hit it?" (Indicated original answer): "A. I don't know, just—came to a stop and the truck plowed into it." (Indicated corrected answer): "A. It had stopped two or three seconds."

It is claimed that the trial court refused to allow counsel for appellants to read the answers originally appearing in the depositions before correction and refused counsel permission to cross-examine the witnesses in reference thereto. Such refusal would be erroneous if the entire depositions were legally and properly before us, both as to the original and corrected answers and if the proper foundation had been laid for their admission and appellant was denied the opportunity to cross-examine the witnesses in this regard and the proper offer of proof was made in reference thereto. (Code Civ. Proc., sec. 2052; *Lawson* v. *Steinbeck,* 44 Cal. App. 685 [186 Pac. 842]; *Lanigan* v. *Neely,* 4 Cal. App. 760 [89 Pac. 441]; *Gasquet* v. *Pechin,* 143 Cal. 515 [77 Pac. 481]; *Card* v. *Boms,* 210 Cal. 200 [291 Pac. 190].)

Appellants cannot and do not question the sufficiency of the evidence to support the judgment when viewed in a light most favorable to respondents. (*Bechtold* v. *Bishop & Co., Inc.,* 16 Cal. (2d) 285 [105 Pac. (2d) 984]; *Girdner* v. *Union Oil Co.,* 216 Cal. 197 [13 Pac. (2d) 915].)

It is contended, however, that had they been permitted to show the inconsistencies between the respondents' testimony at the trial and the answers they originally gave in the depositions, a different result in the verdict of the jury would have obtained. It is difficult to say, in any given case, that the rejection of evidence which may tend to contradict or impeach the testimony of certain witnesses of a number who testified in the case would or would not result in a different verdict.

From a study of the confused record we are unable to say that the original answers and the corrected answers were not before the jury. It appears that the witness was cross-examined in reference to many of the claimed changes, if not all of them. To illustrate our statement, during the cross-examination of Mrs. Lewis, we find the following:

"Q. By Mr. Baker: You recall, do you not, Mrs. Lewis, that your deposition was taken last June in this case? A. Yes. Q. And I call your attention to your deposition on page 12. Will you read from lines 7 to 11? Mr. Campbell: We will stipulate that question was asked and that she gave that answer. Mr. Baker: Suppose I read it aloud. (Reading deposition) 'Let me put it this way, when you saw this collision between the car which was driven by Mr. Gibbs and the Arrowsmith car, when you saw that collision ahead of you, about how long was it after that before your car was stopped? A. It was stopped right now, at once.' . . . Q. What do you mean by 'stopped right now'?" Full cross-examination was then had on that subject. "Q. (By Mr. Baker): I call your attention now to your deposition on page 21. Shall I permit the witness to read that or read it aloud? Mr. Campbell: What is the purpose, impeachment? Mr. Baker: The purpose is cross-examination. Mr. Campbell: We object, then; on the ground no such a method in the law for that. Mr. Baker: It is impeachment and cross-examination. By the Court: All right, then. Mr. Campbell: What line? Mr. Baker: Line 5, from there on, on page 21 to, I think line 2 on page 22. Mr. Dorris: I ob-

ject to that, it is not proper cross-examination, nothing impeaching in there, and not a subject he has examined her on. . . . Mr. Baker: I will ask her some more questions, then. You have testified, have you not, Mrs. Lewis, as to the distance between the Gibbs car in a stopped position at L–5, and the truck at L–4? A. Yes. How far did you say that it was? A. It is a block or over. . . . Q. Which would be longer, the 100 feet or the block? A. The block. Q. (By Mr. Baker): Now, I am going to read these. . . . Mr. Campbell: We will stipulate she gave that testimony. Read it to the jury. . . . Mr. Baker (reading): 'Q. Well, had the Gibbs car come to a stop before the truck had hit it? A. Yes. Q. How long had the Gibbs car come to a stop before the truck hit it? A. I don't know, just came to a stop.' . . . Mr. Baker (reading): 'Q. How long had the Gibbs car come to a stop before the truck hit it? A. I don't know, just came to a stop and the truck plowed into it.' Mr. Campbell: Nothing impeaching in that. Mr. Baker: Here is written in . . . 'It had stopped for 2 or 3 seconds'. . . . Mr. Petrini: Just a minute, is that a correction? Mr. Baker: Yes. Mr. Petrini: I move the answer be stricken excepting the corrected answer, everything but the corrected answer. By the Court: That may go out. Mr. Baker: The correction is in addition, the other isn't stricken out. Mr. Petrini: Well, then, it may stand, the corrected answer should be read. By the Court: That's right, it is apparently added to what is typed." (Mr. Baker continued to read from the deposition.) "Q. Well, we will put it this way. How far away was the truck from the Gibbs car when the Gibbs car came to a stop? A. When I first noticed the truck it was about a block down the road behind the Arrowsmith car. Q. Will you now answer the question, how far away was the truck from the Gibbs car when the Gibbs car stopped? A. When the Gibbs car stopped the truck plowed into it. I don't know how far it was, it plowed into it right now. Q. Right now? All right, and the Gibbs car was clear over on the east side of the road at the time the truck collided with the Gibbs car wasn't it? A. Yes. Mr. Dorris: That's not impeachment. Mr. Baker: Page 28, lines 4 to 6. Mr. Campbell: We will stipulate she gave that answer and was questioned that way. Mr. Baker (reading): 'Q. You say the truck collided with the Gibbs car right now as the Gibbs car stopped, that

is correct, isn't it? A. Yes.' Mr. Baker: I believe you testified, Mrs. Lewis, that a block is longer than 100 feet when you used the word 'block', is that correct? A. I did. . . . Q. Now I call your attention to page 8, lines 17 to 23,— Mr. Campbell: We will stipulate she so testified. Mr. Baker (reading): 'Q. How closely did your car follow the Gibbs car down to the place of collision? A. We were 100 feet away.' You struck out the words 'about a block'. Mr. Petrini: We object to that as being misconduct of counsel. The witness has a right to read and correct her deposition and the corrected deposition is the only part that counsel has . . . By the Court: That is correct. Mr. Bodder: I submit while the witness has a right to correct her deposition counsel manifestly has a right to ask her about the sources of changes. By the Court: Not in a deposition— read only the part as it is corrected. . . . Q. (By Mr. Baker): I call your attention to your deposition, page 17, lines 11 to 13. May I read it? Mr. Petrini: Yes, you can read it. Mr. Baker (reading): 'Q. Then was the Arrowsmith car at the time of the collision on the east side of the road? That would be your left, you have already testified to that? A. Yes, that is right.' Mr. Baker: Then I wish to read from there on. Mr. Campbell: How about reading lines, 19, 20, 21, 22 and 23, and lines 17 and 18? Mr. Baker (reading): 'Q. On the east side of the road. Your car, the one you were traveling in at the time of the collision, was on the west side of the road, wasn't it? A. Yes. Q. Did you see the Gibbs car swerve or go over to the east side of the road before the collision? A. No. Q. It was traveling in the same course at the time of the collision it had been traveling? A. Yes.' Mr. Baker: Now, we ask at this time to read it the way it was originally written and the way it has been corrected. Mr. Campbell: To which we object. Mr. Petrini: We wish to read it. Mr. Baker: On page 17? Mr. Petrini: Yes. Mr. Campbell: Let it go. Mr. Baker: I believe that is all."

The witness was then excused and respondent Mrs. Lewis rested her case. Thereafter, in chambers, in the absence of the jury, appellants made an offer of proof, in writing, after the witness had left the witness stand. The parties agreed that this offer of proof might be considered as made both before and after plaintiffs rested. The proposed offer was "the

depositions" of Leone Lewis, Theodore Lewis and Norma Gibbs, as filed in said causes, to show the exact answers of the deponents under oath before and after corrections. " . . . and to permit these defendants full opportunity to examine and cross-examine the deponents with respect to the original answers and the corrections . . . " The offer, in this form, was denied. In the reporter's transcript, immediately preceding a copy of the exhibits and the court's certificate are what purport to be copies of several designated pages or portions of Mrs. Lewis' deposition. Under what legal authority they may have become a part of the record on appeal is not shown.

In order that a statement may be used against a party as an admission, there must be at least *prima facie* proof that it was made by him or by some person whose statements may legally affect him. Where the admission is a written one, there must be some proof of the authenticity of the writing. (22 C. J., p. 411, sec. 493; *German Fire Ins. Co., etc.,* v. *Gibbs, Wilson & Co.,* 42 Tex. Civ. App. 407 [92 S. W. 1068, 96 S. W. 760].) Preliminary proof of the authenticity of the alleged incorporated answers is indispensable as a predicate to the introduction of a writing as a statement against interest. Section 2052 of the Code of Civil Procedure provides that in laying a predicate for impeachment " . . . before this can be done the statements must be related to him, with the circumstances of times, places, and persons present, and he must be asked whether he made such statements, and if so, allowed to explain them. If the statements be in writing, they must be shown to the witness before any question is put to him concerning them." (*Ray* v. *Pt. Arthur etc. Ry.,* 2 Ont. Weekly Reporter, 345, 347; 70 C. J., p. 1129, sec. 1308.) 24 California Jurisprudence, page 761, section 42, recites: "Where an offer of evidence includes many different propositions grouped together, and the proof of any one is incompetent, irrelevant or immaterial, the court may reject the entire offer. A general offer to prove a variety of things without producing the witness or evidence whereby they are to be proved, or segregating the different items, is improper."

It was said in *Rose* v. *Doe,* 4 Cal. App. 680 [89 Pac. 135], that "A mere general 'offer' without having the witness in court, or, if he be present, without putting a question to him in such form as to give an opportunity for an objection,

would be a sufficient ground for the ruling." (See, also, *Davey* v. *Southern Pac. Co.*, 116 Cal. 325, 330 [48 Pac. 117].) From the cited cases it affirmatively appears that appellants failed to lay the proper foundation for admission of those portions of the depositions in evidence bearing on the original answers given before correction. We are not apprised by the offer of proof whether appellants could have established that the witness gave the original answer before correction or whether the correction was due to an error of the reporter taking the deposition. It is apparent that some of the claimed corrections were on immaterial matters. The offer of proof did not set forth the original depositions or refer to the specific questions propounded and the answers given thereto, with two exceptions, which exceptions were questions and answers that had no bearing on the question of the distance the truck was from the Gibbs car when the Gibbs car came to a stop. The offer of proof, for the reasons expressed, in this respect was defective. It appears from an examination of the testimony of Mrs. Lewis on cross-examination, that considerable latitude was allowed counsel for appellants and whatever contradictions that may have appeared in the depositions were made quite apparent to the jury. It also appears that there was ample substantial evidence by the appellant Maurin and other witnesses excluding the testimony of the Lewises to establish appellant's negligence.

Maurin, although testifying at the trial that he was about 100 feet behind the Arrowsmith car, also testified at the coroner's inquest that he was "about 150 to 200 feet behind him". He also testified that just preceding the accident he had been traveling in his truck at about 35 miles per hour; that Arrowsmith had passed him a short distance down the highway.

Arrowsmith testified that the distance was 2.2 miles south of the scene of the accident and that he (Arrowsmith) was then traveling and continued to travel thereafter "between 40 and 45 miles per hour". This evidence would tend to corroborate the testimony of respondents that the truck was more than 100 feet behind the Arrowsmith car at the time of the sideswipe collision. Maurin also testified that he applied the brakes on the truck but could not say that he applied them on the trailer. He also testified that at 30 miles per hour on a level highway he could stop his truck and

trailer within a distance of 50 feet from the time he applied his brakes.

Although Maurin denied the fact, Mrs. Lewis testified that about 100 feet before the collision "I saw someone jump from the truck"; that at that time the truck veered into them and up over the bank. There was no one on the truck except the driver Maurin.

In view of the following decisions (*Umemoto* v. *McDonald,* 6 Cal. (2d) 587, 592, 593 [58 Pac. (2d) 1274]; *Anglo-Californian Bank* v. *Cerf,* 147 Cal. 384 [81 Pac. 1077]; *Shasta Lumber Co.* v. *McCoy,* 85 Cal. App. 468 [259 Pac. 965]; *Johnson* v. *Ulrey,* 201 Cal. 456 [257 Pac. 505]; *Naylor* v. *Ashton,* 20 Cal. App. 544, 548 [130 Pac. 181]; *Fowler* v. *International Ry. Co.,* 217 App. Div. 537 [216 N. Y. Supp. 558, 561] [Affd. 244 N. Y. 592 (155 N. E. 910)]; *San Joaquin Valley Bank* v. *Bours,* 73 Cal. 200 [14 Pac. 673]), we are unable to hold that prejudicial error has resulted.

The witness Norma Gibbs made some corrections in the answers in her deposition to similar questions propounded to the witnesses above mentioned. She admittedly made the changes and fully explained her reasons.

The witness Theodore Lewis, called under section 2055 of the Code of Civil Procedure, testified generally, and in answer to the following questions said: "Q. When you saw the sideswipe did you see another car or a truck coming north? A. After all three cars had stopped I noticed the truck. Q. Then the Gibbs car and the Arrowsmith car and the car that you were driving had all three stopped before you had seen the truck, is that right? A. Yes. Q. Whereabouts was the truck at that time? A. Oh, three or four hundred feet back or a city block." No attempt was then made, while the witness was on the stand, to impeach him by previous or contradictory statements in his *deposition.* However, two statements, signed by Theodore Lewis were later received in evidence for impeachment purposes. One signed by Mrs. Gibbs was likewise received in evidence. Thereafter, appellants filed another general written offer of proof of the depositions as before, with the additional specific offer in reference to the "change of answers in the deposition of the plaintiff Robert Thomas Lewis", especially on pages 40 and 47 of the deposition and the corrections there appearing. The proper foundation was not laid, for the reasons ex-

pressed and under the authorities cited, for that portion of the Lewis deposition containing the claimed original answers before correction, entitling it to be admitted in evidence for impeachment purposes or as admissions or declarations against interest. Further cross-examination on the question of the claimed changed answers was not requested by appellants other than as set out in the offer of proof.

The questions here presented were duly considered by the trial court before denying appellants' motion for a new trial. The conclusion of the trial court on this motion is entitled to much consideration. (*Citti* v. *Bava,* 204 Cal. 136 [266 Pac. 954]; *Wills* v. *J. J. Newberry Co.,* 43 Cal. App. (2d) 595 [111 Pac. (2d) 346].) In view of the evidence, the ruling of the trial court cannot be said to be erroneous.

The second point involves an instruction dealing with the duty to drive a vehicle close to the right-hand edge of the roadway, which was given in the language of the first paragraph of section 525 of the Vehicle Code. This section has been held to have been enacted for the benefit of motorists traveling in the same direction. (*Polk* v. *Weinstein,* 12 Cal. App. (2d) 360 [55 Pac. (2d) 588]; *Arundel* v. *Turk,* 6 Cal. App. (2d) 162 [44 Pac. (2d) 383].) However, section 527 of the Vehicle Code provides that drivers of vehicles proceeding in opposite directions shall pass each other to the right and " . . . each driver shall give to the other at least one half of the main traveled portion of the roadway whenever possible." Assuming that the instruction given in the language of section 525 of the Vehicle Code was not applicable, we do not deem it to be prejudicial. (*O'Brien* v. *Edens,* 125 Cal. App. 100, 103 [13 Pac. (2d) 754]; 24 Cal. Jur., p. 863, sec. 114; *Silvey* v. *Harm,* 120 Cal. App. 561, 568 [8 Pac. (2d) 570]; *Crooks* v. *White,* 107 Cal. App. 304, 312 [290 Pac. 497]; *Neilson* v. *Walker,* 105 Cal. App. 23, 27 [286 Pac. 1091].)

As to the other criticized instruction, i. e., the instruction in the language of section 531 of the Vehicle Code, respecting the subject matter that one vehicle shall not follow another vehicle more closely than is reasonable and prudent, it should be noted that respondents Lewis were entitled to have such instructions given upon one of their theories of the case, i. e., that both Arrowsmith and appellants were jointly liable to them for the death of Ernest Lewis, due to their con-

current negligence or contributing proximate cause of the fatal accident. (*Bechtold* v. *Bishop & Co., Inc., supra; Cummings* v. *Kendall,* 34 Cal. App. (2d) 379 [93 Pac. (2d) 633].)

It is the general rule of law that even though the evidence may not be sufficient to sustain a cause of action or defense to which an instruction applies, a reversal may not be had upon that ground if the evidence as to the other causes of action or defenses is sufficient to sustain the verdict. (*Brandes* v. *Rucker-Fuller Desk Co.,* 102 Cal. App. 221 [282 Pac. 1009].)　Each of the parties in the consolidated causes was entitled to have his theory of the case presented to the jury in the instructions. (*Buckley* v. *Shell Chemical Co.,* 32 Cal. App. (2d) 209 [89 Pac. (2d) 453] ; *Valencia* v. *San Jose Scavenger Co.,* 21 Cal. App. (2d) 469 [69 Pac. (2d) 480].)

We perceive no prejudicial error in this regard.

For the reasons expressed the judgments are affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing was denied May 24, 1941, and appellants' petition for a hearing by the Supreme Court was denied June 19, 1941.