[Civ. Nos. 7932, 7933.  Second Appellate District, Division Two.— September 5, 1933.]

AILEEN DAY, a Minor, etc., Respondent, v. PICKWICK STAGES SYSTEM (a Corporation) et al., Appellants.

RENA De VITO, Respondent, v. JACK PETERSON et al., Appellants.

Kidd, Schell & Delamer for Appellants.

Harold E. Thomas and P. V. Davis for Respondents.

ARCHBALD, J., *pro tem.*—These appeals from judgments in favor of different plaintiffs involving the same accident were consolidated for convenience and economy.

Aileen Day had asked Edna Shapiro and her sister Miriam to visit Miss Day's sister at Chatsworth, California. Each of the girls asked a boy friend to go with them, one of whom was the defendant Jack Peterson. Edna Shapiro took her Buick coupe and gathered up those who were invited, stopping at the home of Peterson last, apparently. There Edna requested Jack to drive, and he did so. With Jack in the front seat sat Edna and Newton House. Miriam Shapiro sat on young House's knee. Plaintiff Day and one Don Reed sat in the "rumble" seat of the car. The Buick was driven out Cahuenga Boulevard from Hollywood, toward their destination. At a point on that boulevard Mulholland Highway is parallel with it on the west and separated from it by a bank of dirt approximately 10 feet wide, Cahuenga having a grade of about 5.6 per cent up, toward

the north, in which direction the Buick was progressing, and Mulholland an ascending grade of 5.5 per cent toward the south at the same point. At the bottom of the grade on Mulholland Highway Woodrow Wilson Drive, which is also parallel with Cahuenga Boulevard on the west, runs into Mulholland on a descending grade of 11.4 per cent, and where the two come together the dirt bank is cut away for a distance of 64 feet, making an opening into the boulevard from the west at the bottom of both grades. In front of the Buick as it approached said intersection and about 15 feet to its right was a Pickwick tow-car owned by defendant Pickwick Stages System and driven by one Charles C. Cheesbrough, an employee of said company, who was driving such vehicle in the course of his employment. The tow-car turned left at the center of the intersection above described and the Buick turned left with it, when Peterson increased his speed to 40 miles per hour, according to his testimony and that of three others, and to 45 or 50 miles, according to Cheesbrough, in an attempt to pass in front of the tow-car. The Buick passed "very close" to the tow-car and "close to the west curb of the boulevard north of the intersection. The tow-car at the time was within ten feet of the west curb line extended. After passing Cheesbrough's vehicle the Buick collided with the car of plaintiff De Vito, which she was driving south on Cahuenga Boulevard toward said intersection. Aileen Day was injured in the collision and brought suit against Peterson and Edna Shapiro, as well as against said Pickwick Stages System and Charles C. Cheesbrough. The jury returned a verdict of $1,000 in favor of said plaintiff and defendants Peterson and Shapiro have appealed therefrom. Rena De Vito, for injuries sustained by her, brought suit against the same defendants and Ruth E. Thompson, the mother of Jack Peterson, who had signed the application of said minor son for an operator's license. From a judgment in favor of said plaintiff in the sum of $3,500 defendants Jack Peterson, Ruth E. Thompson and Edna Shapiro have appealed. A separate appeal is being prosecuted by said Pickwick Stages System and Charles Cheesbrough from said judgment. The cases were consolidated for trial.

Appellants here claim that reversible error exists in both cases (1) because of the refusal of the trial court to direct

a verdict in their favor, (2) because of the insufficiency of the evidence to sustain the verdicts and judgments, (3) in the admission of certain evidence and (4) in the giving and refusing of certain instructions.

(1) and (2) We are of the opinion that the jury could only have found, under the evidence and instructions, that Peterson did not turn onto the left side of Cahuenga Boulevard until the tow-car had turned to the left. That being the case, we agree with appellants that the only two questions left for the jury, as to both plaintiffs, was, (a) Did the turning of the tow-car place defendant Peterson in a position of sudden danger? and (b) Was Peterson's conduct thereafter negligent? We believe that reasonable minds might well differ as to whether under the circumstances shown by the evidence the driver of the Buick exercised the care required of him in speeding up and passing the tow-car as he did. There is evidence from which the jury might well have concluded that no ordinarily prudent man would do as he did. Defendant Cheesbrough testified as follows, with regard to Woodrow Wilson Drive and Mulholland Highway: "Q. Mr. Cheesbrough, at any time while you were proceeding west did you look toward the west? A. Yes sir. Q. Did you see any cars at all coming out of Woodrow Wilson drive or Mulholland highway at that time? A. No sir. Q. As far as you could see it was absolutely clear? A. Yes sir." Giving the effect to that evidence that the trial court was required to do, we fail to see how it could be said that the question of defendant Peterson's negligence could be taken from the jury.

Considering the fact that the Buick car came so close to the tow-car and the west curb after speeding up to pass, as it did, and the evidence of plaintiff De Vito that after passing the tow-car the Buick turned toward the right and that after she turned toward the right and toward the curb to avoid it the Buick turned suddenly to the left again, colliding with the left front of the De Vito car, we cannot say there is not ample evidence to support the verdict and judgment in both cases, so far as the negligence of the driver of the Buick car is concerned.

Appellants urge that plaintiff Day was engaged in a joint enterprise with defendants Peterson and Edna Shapiro, and also knew of the manner in which the car

was being driven, and consequently is charged with the negligence of Peterson. Miss Day was certainly not charged with any knowledge of negligence in Peterson's driving until after the Buick turned to the left at the scene of the accident, and in the few seconds that intervened between then and the crash she could not even have protested, much less directed, assuming she had the right to direct the progress of the car. The question of whether or not the parties were engaged in a joint enterprise was left to the jury by the court under appropriate instructions, and the verdict rendered shows an adverse decision on that question. All the evidence shows is that the parties were to make a visit to the sister of plaintiff Day. They had a common plan in that, but the community of interest required to impute the negligence of one person to another must be such that the maxim *qui facit per alium facit per se* directly applies. Here plaintiff Day was a mere guest, without any right, so far as the evidence shows, entitling her to be heard in the control and management of the Buick. (*Pope* v. *Halpern,* 193 Cal. 168 [223 Pac. 470]; *Mayen* v. *Southern Pac. Co.,* 63 Cal. App. 164 [218 Pac. 284].) ■ Under the instructions of the court, if the jury had found Mrs. De Vito guilty of negligence no verdict could have been rendered in her favor. We are of the opinion that the implied finding that she was not so negligent is amply supported by the evidence. When within about 100 feet of the tow-car which turned across her path, she slowed down to about 20 miles per hour, and then was suddenly confronted with the Buick, coming toward her at the rate of from 40 to 50 miles per hour. She turned to the right to avoid it and it turned to the left and collided with her. Under such evidence, which the jury had a right to believe, we fail to see how the question of her negligence could be a matter of law for the court.

■ (3) Appellants complain of the action of the court in overruling their objection to the introduction in evidence of the fact that Miriam Shapiro was at the time "sitting in Newton House's lap", making four passengers in the front seat of the coupe. It is urged that such evidence would give to the jury the impression that the group "were on a wild party". We fail to see how such evidence supports any such conclusion. The fact that there were four in the front seat and how they were located might well be an im-

portant factor in determining the question of negligence. The court, however, evidently came to the conclusion as the case progressed that it had no bearing, and at appellants' request instructed the jury to "utterly disregard such fact". We do not see how error can still be urged by appellants.

■ (4) At the request of plaintiffs the court instructed the jury that "any vehicle overtaking another proceeding in the same direction is required, outside of a business or residential district, to give audible warning" with the "bell, gong or horn" with which it is required to be equipped, "before passing or attempting to pass a vehicle proceeding in the same direction", and that if they found "that defendant Peterson overtook and passed the tow-car" it was his, Peterson's duty to give such audible warning, and "the failure of said defendant Peterson so to do constituted a violation of law". It is the latter part of such instruction of which appellants complain, as "it does not take into consideration emergencies which may have necessitated such passing and which may have prevented the giving of such warning". Such instruction correctly states the law. Whether or not it applies under the evidence, which seems to picture the defendant Peterson making a sharp right turn in front of the tow-car instead of passing it under the conditions of the instruction, would seem to be questionable. However, we fail to see how the jury could be confused or appellants prejudiced in view of the evidence. The purpose of such warning is to warn the driver of the vehicle being passed. The Buick did not collide with the tow-car and we do not see how the failure to sound the horn, even if negligence as a matter of law, could possibly be construed by the jury as being in any way related to the accident, which occurred 50 feet beyond where the Buick passed in front of the tow-car. It could not be a proximate cause of the accident under any consideration, and the jury was correctly instructed that negligence was immaterial unless it was the proximate cause of the accident. The jurors were also instructed as to the meaning of proximate cause, and we see nothing in the case indicative of a failure to do their duty under the instructions in that regard.

■ In view of these last instructions we see no merit in appellants' criticism of an instruction requested by plaintiff Day as to liability of two persons if their concurrent negli-

gence contributes to and results in injury to a third person. The instruction itself carries the saving fact that it *results* in the injury. Furthermore, the court instructed the jury at appellants' request that the sole importance of the question as to whether Peterson sounded his horn, in the Day case, was the effect such sounding might or might not have had on the movements of the tow-car, and that so far as the De Vito case was concerned it was entirely immaterial if Peterson did not go onto the westerly half of the road until after the tow-car turned.

Two instructions, refused by the court, were requested stating in substance that if the jury found that the sole proximate cause of the accident was the negligence of the driver of the tow-car, then while they could bring in a verdict against the driver and owner of the tow-car, their verdict would have to be in favor of defendants Peterson, Shapiro and Thompson. The instructions requested were fully covered by others given by the court.

We see no merit in appellants' contention that the court erred in refusing instructions requested by them in effect advising the jurors that they "must consider it to be a fact" that defendant Cheesbrough negligently operated his tow-car and turned it without giving any signal or warning of his intention so to do, and that such act "proximately contributed to the happening of the accident". To state the substance of the instruction is to show its unsoundness in instructing on two very controversial facts upon which there was very conflicting evidence.

Appeals were also taken from the order of the court denying defendants' motions for judgments notwithstanding the verdict, but no point is made on such appeal in the briefs. We must therefore consider same as having been abandoned. (*Mayne* v. *San Diego Electric Ry. Co.*, 179 Cal. 173, 179 [175 Pac. 690].) In view of our opinion as to the action of the trial court in denying appellants' motion for a directed verdict, however, we see no merit in such appeals.

Appeals from orders dismissed. Judgments affirmed.

Works, P. J., and Stephens, J., concurred.