[Civ. No. 9004. Second Appellate District, Division One.—April 12, 1935.]

SARAH ARUNDEL, Appellant, v. L. A. TURK et al., Respondents.

Ernest M. Torchia for Appellant.

Harry D. Parker and Raymond G. Stanbury for Respondents.

ROTH, J., *pro tem.*—This appeal is from a judgment entered upon a directed verdict. The evidence shows that

appellant Sarah Arundel, plaintiff in the trial court, driving a Dodge six sedan, had completed a left turn from Ocean Park Boulevard into Main Street, public streets in the city of Ocean Park, California, and proceeded in a southerly direction on Main Street in second gear for approximately fifty to seventy-five feet, at a speed between twelve and fourteen miles per hour. According to her testimony and that of two eye-witnesses, her automobile was proceeding on her right side of the street parallel and a few feet to the west of a mythical center line in the street, when a Durant coupe, which respondent was driving at a speed of twenty to twenty-five miles per hour from the south to the north on the same street, angled to the west of said mythical center line, whereupon the left front sides of the automobiles in question collided. Appellant and the two eye-witnesses mentioned testified that the actual impact took place on the appellant's part of the roadway, that is, west of the center. The testimony is undisputed, however, that when the cars came to rest the Durant was eight to ten feet east of the center of the street, and the whole of appellant's Dodge with the exception of the right rear wheel, was east of the center and impacted at an angle of five degrees, using the center of the street as a base, left front to left front with the Durant. The evidence also showed that there were no automobiles to the right of appellant, and that she could have operated her Dodge closer to the curb.

Respondent persuaded the trial court and reiterates now that because of the undisputed physical evidence showing the positions of the two cars when they had come to rest after the impact, any testimony to the effect that the actual collision took place west of the center of the street was opposed to the laws of nature, and is so incredible that such testimony is unworthy of belief by any reasonable person, and is therefore no evidence at all. (*Waizman* v. *Black,* 101 Cal. App. 610 [281 Pac. 1087]; *Keyes* v. *Hawley,* 100 Cal. App. 53 [279 Pac. 674]; *Uhl* v. *Fertig,* 56 Cal. App. 718 [206 Pac. 467].) █ Respondent further argued at that time and urges now that the single physical fact referred to indicates that the appellant was on the wrong side of the street, but even though she was not, that she was guilty of contributory negligence as a matter of law, be-

cause, assuming that she was on her right side of the road, she operated her automobile too close to the center line when there was plenty of room to the right. This latter contention is based upon section 122b of the California Vehicle Act: "In driving upon the right half of a highway the driver shall drive as closely as practicable to the right hand edge or curb of the highway except when overtaking or passing another vehicle, or when placing a vehicle in position to make a left turn."

If plaintiff was on the right side of the highway, we fail to see the application of the section mentioned. We believe, and we have been cited no authority to the contrary, that the section in question was enacted for the benefit of motorists traveling in the same direction. No motorist traveling in an opposite direction has a right to leave the portion of the roadway fixed for such travel on the blind assumption that vehicles coming in a single stream from the opposite direction will hug either the curb of a street or the edge of a highway. If application of section 122b is made as contended for by respondent, any motorist could with impunity use more than one-half of the highway, on the theory that the motorists driving from an opposite direction not only did not need the half allotted to them, but were violating the law in an attempt to use it.

Neither can we agree with the contention of respondent that the evidence of the eye-witnesses as to the place and manner of the collision is incredible. The physical facts showing the positions of the two automobiles are undoubtedly of marked significance, especially when weighed with the evidence that respondent was driving between twenty and twenty-five miles per hour and appellant twelve or fourteen miles per hour immediately prior to the impact. These two facts, however, are not of such finality as to stamp the testimony of two eye-witnesses, who—so far as the record shows—are wholly unprejudiced and of good repute, as totally incredible. There is no evidence as to the weight of the respective cars at the time of the collision. The witnesses, other than appellant, had a clear and unobstructed view of the accident and were close enough to see it, and their testimony is not impeached in any respect. Furthermore, while respondent testified his rate

of speed was twenty to twenty-five miles per hour, the jury did not have to believe respondent's testimony in this regard. If respondent was traveling at a lesser speed than appellant, or at the same speed and in a car of less weight than appellant's, the physical fact upon which so great reliance is placed loses much of its importance. Furthermore, one of the eye-witnesses, standing approximately fifty feet from the point of collision, testified, after he had definitely fixed the point of collision on appellant's side of the street, "You could see where one car pushed the other car back, by reason of the skid marks that was there after the accident." The Dodge, according to his testimony, was the car that did the pushing. The other eye-witness testified: "From the way it looked to me . . . his car (referring to the Durant) was hit on the right hand side of the center line of the street (appellant's side of the street), on the left side of the car, and her car (the Dodge) was hit on the right hand side of the street." The same witness testified: " . . . there was an impact . . . and this car (the Dodge) shoved the other car back, like that, and when the cars stopped they were bumper to bumper . . . "

Although the cases upon analysis do not seem to be in agreement as to what principle should govern the trial court on a motion for directed verdict (*Estate of Flood,* 217 Cal. 763, 768 [21 Pac. (2d) 579]; *Robbiano* v. *Bovet,* 218 Cal. 589, 599 [24 Pac. (2d) 466]; *Estate of Baldwin,* 162 Cal. 471, 473 [123 Pac. 267]), it seems that a court should be governed by the same rules which control its action upon motion for nonsuit. (*Estate of Flood, supra.*)

In the Flood case, at page 768, it is said: "It has become the established law of this state that the power of the court to direct a verdict is absolutely the same as the power of the court to grant a nonsuit. A nonsuit or a directed verdict may be granted 'only when, *disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence,* the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given'."

We adopt and affirm the principles with reference to a directed verdict, as enunciated in the Flood case. In order, therefore, to affirm the judgment in this case, we must say as a matter of law that no reasonable conclusion or inference can be made or drawn from the evidence, except that the negligence or contributory negligence of appellant directly caused or contributed to the collision, or we must say that the evidence adduced in favor of appellant is so incredible or so lacking in support that, if appellant had recovered a judgment, we would be compelled to reverse it upon appeal. The facts as briefly outlined do not permit us to say either the one or the other, and would not permit us to do the latter.

The judgment is reversed and the cause remanded for a new trial.

Houser, Acting P. J., and York, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 10, 1935.