[Civ. No. 3046.   Fourth Dist.   Mar. 26, 1943.]

WILLIAM M. MORRISON, Respondent, v. CORINE JOSE
et al., Appellants.

Brittan & Mack and Harvey, Johnston & Baker for Appellants.

Borton, Petrini, Conron & Borton for Respondent.

GRIFFIN, J.—Plaintiff and respondent Morrison prosecuted this action against defendants and appellants Corine Jose and A. D. Jose, for damages resulting from injuries received in an automobile accident. The respondent was an employee of Winnie Whitmore, upon whose dairy ranch he resided. Fred Lanagan was a truck driver for Mrs. Whitmore, and on the night in question he had possession of her pick-up truck. He invited Morrison to accompany him to Ford City, which is a few miles distant from her ranch. Corine Jose was the driver of a Plymouth automobile which collided with the pick-up truck which was being driven by Lanagan. It was stipulated that Corine and A. D. Jose were the joint owners of the automobile driven by Mrs. Jose and that she was driving the automobile with the consent and permission of Mr. Jose. The Plymouth car was proceeding

in a general southerly direction. The truck in which respondent was riding was being operated in a general northerly direction. The highway on which the accident happened runs north and south and is a two-lane highway, 18 feet in width. Each lane is 9 feet wide. The collision occurred at about midnight on April 21, 1940. The highway was level at the place of the collision, which occurred at the crest of a small hill. There was a down grade in both directions from the crest of the hill and also there were some curves in the highway. Morrison contends he was riding as a guest in the automobile being driven by Lanagan.

Respondent testified that on April 21, 1940, he had to get some groceries so Lanagan said: "Come along, go with me"; that he went with Lanagan to town; that they first went to Lanagan's home in Ford City, where he changed his clothes; that they then obtained a few groceries and then stopped in a pool hall or two; that he had "part of a drink" of whiskey at one place and one drink at another; that he thought Lanagan had one in each place; that they then started home; that Lanagan was driving and that he (Morrison) did not have anything to do with the control and operation of the "pick-up"; that when the driver Lanagan made the last turn just before the accident he (Morrison) reached down to straighten up the groceries he had purchased which were "setting on the floor-board"; that as they came close to the crest of the hill he saw two lights approaching; that the pick-up on which he was riding was on its right or easterly side of the road; that when he looked up the lights on the approaching car were "straight ahead or towards us"; that a collision occurred and he did not remember anything thereafter until he awakened in the hospital; that he received a fractured jaw and the doctors "wired my mouth shut"; that infection set in; that the wires were not removed until about September 1st; that it was about two months before he could open his mouth to eat; that he was in the county hospital about 22 days; that in addition to permanent scars on his face he had other quite serious injuries to his back and knee and a cut on his ear; that several teeth were broken and that he was out of work for about one year.

Lanagan testified that after he finished work at the ranch he picked up Morrison; that he was going to town and Mor-

rison went with him to "get some groceries"; that he was going to town to bathe and change his clothes, which he did; that they picked up the groceries and then visited various pool halls and drinking establishments; that he had two drinks of whiskey over a period of some hours and then started back to the ranch; that he was driving and Morrison was riding with him "sitting there as a passenger and . . . a guest in the car"; that Morrison had nothing to do with the "control, operation or direction" of the pick-up; that about one-fourth of a mile before he approached the crest of the hill Morrison started to roll the window of the car up on his side; that he reached over to show him how to operate the handle; that as he arrived at the crest of the hill he was driving on his right-hand or easterly lane of the highway; that at that moment he observed a car coming toward him "in the east lane," i. e., in his lane about 15 to 20 feet away; that he was going about 35 miles per hour; that he "gave it the blinkers and then saw I was just about to get hit, couldn't get out of the way—I thought I would cut to the left, I didn't think I would get hit"; that a collision occurred and after he regained consciousness he observed the position of the cars; that they looked to him to be "both in the center in the lane going north, with a slight variation of the rear end" of the pick-up being thrown around; that he didn't have permission of Mrs. Whitmore to use the pick-up for his personal business but only for business purposes. On cross-examination the witness was shown several statements he made in a deposition which were conflicting with the testimony above related.

Corine Jose testified that she went driving with a Mrs. Maguire about 7 o'clock that evening; that before 9:30 p. m. she had had two and a half glasses of "fortified" wine to drink; that they then went home and saw her husband and later went to Taft; that she had another glass of wine there and did not feel the effects of any of it; that Mrs. Maguire had three or four bottles of beer. She then testified that as she approached the crest of the hill she saw a car just a few car lengths from her, approaching from the opposite direction; that she was on her right-hand side of the white line and in her proper driving lane; that at the brow of the hill Lanagan swerved clear over into her lane, to his left, "like he was going *catercornered* across the road"; that she

turned to her left into his lane to try to get out of his way and then the cars collided and she was knocked unconscious and her passenger, Mrs. Maguire, was killed.

A highway patrol officer testified that he investigated the accident. A diagram was drawn by him showing the relative positions of the cars on the highway after the accident. It indicates that the right rear wheel of the Plymouth automobile was sitting directly on the white line and the entire balance of the car was in the east lane; that the rear three-fourths of the pick-up was in the west lane over the white line and at right angles to it. There was a skid mark which began about 18 inches or 2 feet east of the white line and extended, so far as the witness could see, to the right rear wheel of the pick-up. He testified that there was a considerable amount of broken glass and two large oil spots where oil had run out of both vehicles; that the glass was right in the center where the two vehicles had come together and that the oil was underneath the motor of each vehicle; that the glass and debris was about in the center of the easterly or north-bound lane. He then testified that he went to the hospital and talked to Mrs. Jose and that she said ''she didn't know, didn't remember'' how the accident happened; that he smelled alcohol on her breath and that in his opinion ''she was under the influence of liquor to the point that I ordered a blood test to be taken of her.''

Other witnesses corroborated the officer's testimony as to the location of the cars after the accident. One witness described the pick-up truck as being entirely in the west lane after the accident. Another witness testified that he was hitchhiking on the road and noticed the pick-up truck as it passed him and at that time it was on the left side of the road and west of the center line; that when he observed it it was a few miles from the scene of the accident.

Several witnesses testified in reference to the condition of the respondent's, as well as Lanagan's and the appellant Corine Jose's sobriety at the time. Evidence was then admitted which showed, in connection with the blood test of Mrs. Jose, 1.5 milligrams of absolute alcohol per cubic centimeter of blood, and it was testified by a physician that ''That is the lower elements of intoxication in which we feel that

it is dangerous for a person to drive a car to use to get about.''

Upon this evidence the jury returned a verdit for the respondent and against appellants in the sum of $3,300. Appellants appealed.

■ The first question presented involves the propriety of an instruction given by the court at the request of respondent. The jury was instructed that under the evidence presented the negligence of Lanagan, if any, could not be imputed to Morrison, the respondent. It is appellants' contention that the defense of joint enterprise was pleaded and that there was sufficient evidence upon which the jury could have found that Morrison and Lanagan were, at the time, engaged in a joint enterprise and that therefore the trial court erred in instructing the jury accordingly. Giving the evidence the benefit of every reasonable inference, we are convinced that the trial court was correct in its interpretation of the evidence in this respect. The respondent did not drive the truck at any time, nor did he exercise any control or management over it whatsoever. It cannot be said that the mere fact that the respondent was going to town to obtain some groceries, and that as an accommodation to him Lanagan agreed to drive the truck to his home for the purpose of changing his clothes and subsequently purchasing the groceries for respondent, that a joint venture resulted. *Morrissey* v. *Kirkelie,* 5 Cal.App.2d 183 [42 P.2d 361], to us, seems to dispose of appellants' contention in this respect. The plaintiff in that action rode from Los Angeles to Ventura in an automobile belonging to and driven by her fiancé. While in Ventura they filed a notice of intention to marry, having made the trip for that purpose. On the way home their car collided with another car. The court declined to instruct the jury on the doctrine of joint enterprise and imputable negligence upon the ground that under the undisputed facts the negligence of the driver could not be imputed to the plaintiff. The court said at page 184:

''The negligence of an automobile driver is not to be imputed to a passenger who has no control over the car in fact and who does not bear such a relation to the use of the vehicle as to warrant the assumption that he is jointly engaged with the driver in the operation thereof. The fact that they have a common purpose in making the trip is not,

alone, sufficient. It is unnecessary to discuss the authorities further than to say that they uniformly adhere to this rule. [Citing cases.]'' (See, also, *O'Brien* v. *Edens,* 125 Cal.App. 100, 104 [13 P.2d 754]; 2 Cal.Jur. Supp., p. 612, sec. 399; *Day* v. *Pickwick Stages System,* 134 Cal.App. 92 [25 P.2d 16].)

▪ The next question presented demands more consideration. The trial court gave an instruction, at the request of respondent, in the exact language of section 525 California Vehicle Code respecting a driver's duty to drive on the right half and as close as practicable to the right hand curb or edge of the roadway. No instruction was offered by either party nor was any given in the language of section 527 California Vehicle Code in regard to a driver's duty when passing another vehicle proceeding in an opposite direction. In several reported cases it has been stated that section 525 California Vehicle Code was not applicable where the cars were passing each other in opposite directions. (*Arundel* v. *Turk,* 6 Cal.App.2d 162 [44 P.2d 383]; *Polk* v. *Weinstein,* 12 Cal.App.2d 360 [55 P.2d 588]; *Lewis* v. *Western Truck Line,* 44 Cal.App.2d 455 [112 P.2d 747]; *Bennett* v. *Chandler,* 52 Cal.App.2d 255 [126 P.2d 173]; *Finney* v. *Wierman,* 52 Cal.App.2d 282 [126 P.2d 143].) The rule that a motorist should drive as close as practicable to the right hand edge of the highway has been applied in a number of situations other than when motorists were traveling in the same direction. (*McLellan* v. *Cocola,* 133 Cal.App. 9 [24 P.2d 200]; *Kellner* v. *Witte,* 133 Cal.App. 231 [23 P.2d 1045].) See, also, *Mathers* v. *County of Riverside,* (Cal.App.) [132 P.2d 38], [Hearing granted in Supreme Court]. In the instant case, after reading section 525, *supra,* the jury was instructed:

"Conduct which is in violation of the provisions of the Motor Vehicle Act, which the court has read to you . . . constitutes negligence per se. By this statement is meant: that evidence of such conduct, standing alone, and in the absence of other evidence excusing or justifying it, gives rise to a presumption of negligence. Such presumption, however, is not conclusive; that is, it may be overcome by other evidence showing that under all the circumstances surrounding the event the conduct in question was such as might reasonably have been expected from a person of ordinary prudence.''

The latter instruction, therefore, qualified the effect of the first one, in that the presumption of negligence is not stated to be absolute, but it is stated that the violation of the code section may be explained by circumstances surrounding the event. This instruction was followed by a general instruction on the sudden peril rule. Another instruction was then given, at the request of appellant, defining negligence in general. It is argued that the proximate cause of the accident was the negligence of Lanagan and that the question of appellants' liability was a close one; that, therefore, the giving of the instruction based on section 525 California Vehicle Code without giving one based on section 527 California Vehicle Code was prejudicial. The jury found, under proper instructions, that the respondent was not guilty of contributory negligence in riding with the driver of the truck under the circumstances related. The trial court properly instructed the jury that there was not sufficient evidence to constitute a joint enterprise as above mentioned. There is substantial evidence that the appellant Corine Jose was negligent in many respects in the operation of her car. Any negligence on the part of Lanagan could not be imputed to the respondent guest. The instruction, as given, was general in its terms and applied to the conduct of both drivers. No instruction was offered by appellant under section 527 California Vehicle Code correctly defining the duties of the respective drivers.

Without deciding whether the instruction, as given, was or was not erroneous, even if we assume it to be so, there still remains the question whether the giving of such an instruction was prejudicial under the facts of this case. (*Blanton v. Curry*, 20 Cal.2d 793 [129 P.2d 1]; *Gackstetter v. Market Street Ry. Co.*, 130 Cal.App. 316, 324 [20 P.2d 93]; *Nance v. Fresno City Lines, Inc.*, 44 Cal.App.2d 868 [113 P.2d 244].) In *Paulsen v. McDuffie*, 4 Cal.2d 111 [47 P.2d 709], at page 119, it is said:

"Had this been a case where the contributory negligence of the plaintiff would have defeated his claim for damages, the consequences following the giving of that instruction might have been most serious, and possibly might have required a reversal of the judgment."

Article VI, section 4½ of the Constitution provides that no judgment shall be set aside in any case on the ground

of misdirection of the jury unless, after an examination of the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice. In the instant case a motion for new trial on this same ground was fully heard and argued before the trial court and was denied. The conclusion of the trial judge on a motion for new trial on the ground here presented should have some consideration. (*Lasch* v. *Edgar,* 46 Cal.App.2d 726 [116 P.2d 949].) We are convinced, even though it be assumed, under the circumstances of this case, the instruction given under section 525 of the California Vehicle Code was erroneous, no prejudicial error resulted. (*Ohlson* v. *Frazier,* 2 Cal.App. 2d 708 [39 P.2d 429]; *Dewhirst* v. *Leopold,* 194 Cal. 424 [229 P. 30]; *Bennett* v. *Chandler, supra.*)

The next question presented involves the admissibility of the results of the blood test of Mrs. Jose, as to alcoholic content. It is argued that there was not sufficient showing of the ''tracing of the sample of blood'' from the body of Corine Jose to the time of its analysis and interpretation of its alcoholic content. The state highway patrol officer testified, without objection, that he ordered a blood test taken of Mrs. Jose and that it was ''taken there at the Taft County Hospital.'' On cross-examination no questions were asked of the officer in respect to this testimony and no motion was made to strike it. It then appears from the undisputed evidence that the patrolman transported the sample of blood, so taken, to the Kern County General Hospital, and it was left with a Mrs. Saunders for analysis and report. Evelyn Graham, laboratory technician at the county hospital, testified as follows: Question by Mr. Borton: ''Calling your attention to the 22nd of April, 1940, did you perform a blood test on a sample of blood of Mrs. Corine Jose? A. Yes. Q. What was the result of that test? MR. MACK: Just a minute I object—no proper foundation laid. May I ask a question on voir dire? . . . MR. MACK: Someone told you that was her blood? A. The sample was labeled with her name. Q. How long after did you test it? A. I don't know when it was taken. I procured it from a lock box at 8 o'clock in the morning . . . Q. You identified it by the label? A. Yes. MR. MACK: I think that is hearsay, Your Honor . . . BY THE COURT: I am going to let her testify on

that. MR. BORTON: —What was the result of the test? A. I found 1.5 milligrams of absolute alcohol per cubic centimeter of blood. MR. BORTON: That is all.''

Mrs. Saunders was then called and as counsel for respondent offered to mark certain X-rays and records from the Kern County hospital for identification, Mr. Mack interrupted and said: ''If Mrs. Saunders says these are his, it is Okay . . . I won't raise the objection. They are directly from the Kern General, but reserve any other objection I may have . . . MR. BORTON: Are you going to question them? MR. MACK: No.'' The witness was then excused. It appears that no objection to any question was made until the witness Graham had answered the question showing she made the test of a blood sample of Mrs. Jose. No mention was made to strike the answer ''Yes.'' It was not until the question was propounded seeking the result of the test that an objection was made for the purpose of ''voir dire.'' Counsel then, without making any other formal objection or motion to strike, remarked: ''I think that is hearsay, Your Honor.'' It will be noted that Mr. Borton again asked the question. No objection was then made and the witness answered without further objection. No motion was subsequently made to strike the answer. It is apparent that appellant submitted to the suggestion of the court and failed to make a timely and proper objection if he intended to preserve his point. It is a well-settled rule that parties cannot urge, for the first time on appeal, objections which could have been obviated if properly made in the court below. (2 Cal.Jur., p. 248, sec. 74.)

The testimony of Dr. Joe Smith was to the effect that, in his opinion as a medical man, a blood alcohol test of 1.5 milligrams per cubic centimeter of absolute alcohol indicated the lower limits of intoxication, in which it is dangerous for a person to drive a car. He was the attending physician of respondent and was called as a witness on his behalf. Counsel for respondent inquired if he was a duly licensed practicing physician and surgeon in Kern County. Counsel for appellants then said: ''We will stipulate to Dr. Smith's qualifications.'' The doctor then testified as to the medical treatments given respondent and the extent of his injuries. Later, he was asked if he was familiar with blood alcohol tests and he replied: ''A little, yes.'' He was then

asked for the opinion above related and the question was objected to on the ground that no proper foundation had been laid. The court remarked: "Technically, I think you are right. I am going to let him answer the question." No further objection was made nor was any motion made to strike the answer as given. ■ The question of the qualification of a witness to express an opinion as an expert is one directed first to the sound discretion and judgment of the trier of facts and its determination will not be disturbed on appeal in the absence of a proper showing of an abuse of discretion. (10 Cal.Jur., p. 963, sec. 220, and cases cited.) ■ In view of this determination and the stipulation of counsel, we do not see how appellants can now be heard to complain as to whether the proper foundation had been laid.

The other points raised are not meritorious nor deserving of further consideration.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 24, 1943.