[Civ. No. 12762. First Dist., Div. One. June 1, 1945.]

ARTHUR STAMPER, Respondent, v. FRANK P. SCHEMMEL, Appellant.

450

Bronson, Bronson & McKinnon for Appellant.

H. A. Gabriel and Campbell, Hayes & Custer for Respondent.

KNIGHT, J.—The plaintiff, Arthur Stamper, was struck and injured by an automobile owned and driven by the defendant, Frank P. Schemmel. Among the injuries plaintiff received was a compound, comminuted fracture of both bones

of the left leg below the knee; and in the present action a jury awarded him damages in the sum of $2,500. Motion for new trial was denied, and defendant appeals. There is no contention made that the jury's verdict is wanting in evidentiary support, nor is any complaint made of the rulings on the admissibility of evidence. The sole ground urged for reversal is that the trial court misdirected the jury to defendant's prejudice by reading to the jury as part of the court's charge, paragraph (b) of section 529 of the Vehicle Code.

Briefly, the circumstances leading up to the happening of the accident were these: Plaintiff and his father, Albert Stamper, were driving their car toward Santa Clara over the Saratoga-Santa Clara Highway in Santa Clara County. It is a two-lane highway with a 20-foot paved center, and shoulders two and a half feet wide. They were driving through a dense fog about 7:30 o'clock in the morning, and at the point of the accident they sideswiped the left rear end of a car occupied by Charles Rush and his son Robert, traveling also toward Santa Clara, but which had just then pulled over to the right to the edge of the highway and stopped because of windshield wiper trouble. The Stampers continued on about 40 or 50 feet and then pulled off the highway to the right into an adjoining orchard and stopped. The testimony is conflicting as to their subsequent movements. They testified that they started to walk back through the orchard toward the Rush car which was parked at an angle partly off the paved portion of the highway, and that when they reached a point about 10 or 15 feet from the front end of the Rush car and about 12 feet to the right of the paved portion of the highway, they were struck and knocked down by defendant's car, which also was traveling toward Santa Clara; that they did not hear the approach of defendant's car, and on account of the dense fog did not see it until it was within eight feet of them; that it was then impossible for them to get out of its way. Charles Rush and his son were called as witnesses for the defendant and in contradiction of the testimony given by the Stampers they testified that after the Stampers brought their car to a stop in the orchard they walked back to the Rush car and that an argument started as to whether the tail light of the Rush car was lighted at the time it was sideswiped; that during the discussion all parties walked to the rear of the Rush car to examine the tail light; that while the discussion

was going on they heard the approach of another car from the rear; that Robert Rush called to his father to "get out of the way" and that thereupon the assembly scattered; that Robert Rush ran to the left across the highway and that the other three ran around the right side of the Rush car. Continuing, Charles Rush testified that he succeeded in getting around in front of his car and that the Stampers reached a point about opposite the front end when they were struck and knocked down by the car driven by the defendant; that at the time of the impact plaintiff was about two or three feet to the right of the front end of the Rush car and about eight feet from the shoulder of the highway. All testified that on account of the dense fog they did not see the approach of defendant's car and were unable to give any estimate as to the speed the defendant's car was traveling when it overtook the Rush car. The defendant testified that because of the dense fog he was traveling at a speed of about 15 or 20 miles an hour; that he did not see the Rush car; that the first he saw was two men standing "toward" the center of the highway about 15 or 20 feet ahead of him; that in order to avoid striking them he swerved to the right, and at that moment the men ran to the right; that he applied his brakes instantly and maneuvered his car in an effort to avoid striking them, but was unable to avoid the impact; that he brought his car to a stop within a couple of feet beyond the point of impact.

Plaintiff's cause of action was based on allegations to the effect that at the time of the accident there was an automobile stalled on the highway; that the dense fog greatly impaired "the vision of any person travelling" on the highway; that defendant was driving his car at such a careless and negligent rate of speed through the dense fog that he could not avoid colliding with the stalled car "without the excessive use of his brakes" and that he carelessly and negligently applied his brakes with such pressure as to cause it to skid across the highway and along the side thereof where plaintiff was walking, thereby knocking plaintiff down and causing the injuries above mentioned.

The answer denied the allegations of negligence and as a special defense pleaded that plaintiff was guilty of contributory negligence; and the record shows that at the trial defendant relied almost entirely on the doctrines of imminent peril and unavoidable accident, and that his case was

submitted to the jury on those theories. The court's charge to the jury consisted of 45 separate instructions. Many of them related to the subjects of the negligent operation of motor vehicles, contributory negligence, imminent peril, and unavoidable accident; and among those given was the following, proposed by plaintiff: "You are instructed that Section 529B of the Motor Vehicle Code of the State of California provides as follows: 'The driver of a motor vehicle may overtake and pass another vehicle upon the right only under conditions permitting such movement in safety. In no event shall such movement be made by driving upon the shoulder of the highway.' "

Defendant's first contention is that section 529(b) has no application to parked vehicles, and in support of such contention he cites and relies upon the case of *Ketchum* v. *Pattee*, 37 Cal.App.2d 122 [98 P.2d 1051]. An analysis of the decision shows that the case is not in point. It involved a different section of the Vehicle Code—section 528, which bears the title "Overtaking a Vehicle on the Left." The pertinent portions of that section read: "The following rules shall govern the overtaking and passing of vehicles *proceeding in the same direction,* subject to the limitations and exceptions hereinafter stated: (a) [overtaking vehicle to pass to the left.] The driver of a vehicle overtaking another vehicle *proceeding in the same direction* shall pass to the left thereof at a safe distance. . . ." (italics added). And in the Ketchum case it was held that the words above italicized as used in section 528 meant moving vehicles and did not include a situation where the car being overtaken and passed was parked. Section 529, however, with which we are here concerned, does not contain the italicized words embodied in section 528, on which that portion of the decision in the Ketchum case turned, and the legislative history of those sections (and of § 530 which bears the title "Limitations on Overtaking on the Left") clearly shows that in 1939 when the Legislature recast section 529 it intentionally eliminated therefrom the words which afterwards formed the basis of the decision in the Ketchum case. In this regard it appears that all three sections, 528, 529 and 530, were enacted in 1935 and that sections 529 and 530 were recast in 1939. No change was made in section 528. Prior to 1939 sections 529 and 530, like section 528, embodied the words "proceeding in the same direction," and when sections 529

and 530 were revised in 1939 the words above italicized were again inserted in section 530, but they were eliminated entirely in the revision of section 529. It will be seen, therefore, that in order to apply the construction placed on section 528 by the decision in the Ketchum case to the provisions of section 529 it would be necessary for this court to reinsert therein the words which were intentionally eliminated therefrom by the Legislature in 1939; and obviously it is beyond the power of this court so to do. ■ Defendant further contends that section 528 and section 529 should be read and construed together, and that therefore it should be held that the clause ''subject to the limitations and exceptions hereinafter stated'' as used in the opening paragraph of section 528 has reference to the limitations and exceptions embodied in section 529. There is no merit in the contention. As shown by the titles to the two sections, as well as by the contents thereof, they were designed to operate independently of each other. The subject matters of the two sections are entirely different. Section 528 prescribes rules governing vehicles overtaking and passing other vehicles to the left; whereas section 529 governs in cases of passing to the right. Section 529 is nowhere mentioned in section 528, nor is section 528 anywhere referred to in section 529; and an examination of section 528 makes it plain that the clause ''subject to the limitations and exceptions hereinafter stated'' has reference only to the two paragraphs immediately following that clause in section 528.

■ Defendant makes the alternative contention that assuming that section 529(b) does apply to parked vehicles, the reading of that section to the jury without qualification constituted prejudicial error in that the effect thereof was to invade the province of the jury by depriving it of the right to consider and pass upon defendant's defenses of imminent peril and unavoidable accident.

Section 4½ of article VI of the state Constitution provides that ''No judgment shall be set aside, or new trial granted, in any case, on the ground of misdirection of the jury . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.'' ■ Moreover, it is well settled that broad discretionary powers are vested in a trial court in passing upon a motion for a new trial; that its action in deciding the motion is

entitled to great weight (*Morrison* v. *Jose*, 57 Cal.App.2d 795 [135 P.2d 586]; *Lewis* v. *Western Truck Line*, 44 Cal. App.2d 455 [112 P.2d 747]) and that on appeal a showing of "manifest and unmistakable" abuse of discretion is essential to justify a reversal of the trial court's order (see *Fennessey* v. *Pacific Gas & Elec. Co.*, 10 Cal.2d 538 [76 P.2d 104] and cases cited therein).

 In the present case we have examined the record, including the evidence and the entire charge to the jury, and while we agree with defendant that section 529(b) should not have been read to the jury without qualification, we are not prepared to hold as a matter of law, contrary to the conclusion reached by the trial court, that the failure so to qualify the section operated to defendant's prejudice and resulted in a miscarriage of justice. As will be noted, the instruction complained of was not a formula instruction. It was the sixth instruction given, following which the court gave a great many others on the law of negligence, contributory negligence, imminent peril and unavoidable accident. The defendant does not challenge the correctness of any of those instructions, nor does he claim that for any reason any of them were erroneously given. In nearly all of them the jury was instructed that if the defendant proved by a preponderance of the evidence the defenses therein dealt with, he was entitled to a verdict. Furthermore, among the instructions so given was the following: ". . . even though you find and believe from the evidence that the defendant Schemmel was guilty of negligence in any one or more of the particulars complained of by plaintiff, still your verdict cannot be for plaintiff unless you further find and believe from the preponderance of the credible testimony that such negligent act or acts of defendant, if any you find, proximately caused the injury."

In the foregoing state of the record it cannot reasonably be held that there was a manifest and unmistakable abuse of discretion on the part of the trial court in concluding that the giving of the instruction complained of did not mislead the jury into the belief that the defenses interposed by the defendant were no longer available to him and that the jury was precluded from returning a verdict in his favor on the evidence introduced by him in support of those defenses.

The case of *Mathers* v. *County of Riverside*, 22 Cal.2d 781

[141 P.2d 419], cited by defendant, is not in point for the reason that the instruction there involved was strictly a formula instruction; and in the case of *Finney* v. *Wierman*, 52 Cal.App.2d 282 [126 P.2d 143], upon which defendant mainly relies in support of his position, the situation was different in the following respects from the one here presented: Two instructions were there involved, each of which embodied the language of a section of the Vehicle Code; and to the first of those instructions the trial court added this express admonition: "If you believe from a preponderance of the evidence that Ora Finney violated the provisions of this section, she was *guilty of negligence as a matter of law*" (italics added); and a like express admonition was added to the second instruction. Both instructions were therefore borderline formula instructions; and the trial court, in the exercise of the broad discretionary power conferred upon it in passing upon a motion for new trial, evidently concluded that under the circumstances of that particular case the jury was misled thereby, and it granted the motion. On the appeal it was held that there was no abuse of discretion on the part of the trial court; that the reading of the code sections without qualification, *with the added express admonitions that a violation of those sections constituted negligence as a matter of law,* was error, and that the error was not cured by the general instruction thereafter given on the doctrine of imminent peril. And in so holding the court went on to say: "It is to be remembered that in all of the preceding discussion we have advanced upon the theory that every intendment is in favor of supporting the order of the trial court."

In the present case there is involved but a single instruction, embodying one paragraph of a code section; and unlike the Finney case no admonition was attached thereto that a violation of that portion of the code section constituted negligence as a matter of law; nor was any other instruction given by the court to the effect that the violation of a statute constituted negligence as a matter of law. Moreover, as stated, the jury was fully and fairly instructed on the law pertaining to the several defenses relied upon by defendant. Under those circumstances, and having heard all of the evidence in the case, the trial court was called upon to exercise the discretionary powers conferred upon it in determining whether the giving of the instruction complained of misled

the jury or otherwise operated to the defendant's prejudice; and by denying the motion it held that it did neither. Therefore, having in mind the constitutional amendment above set forth and applying the principle of law referred to in the Finney case, that every intendment is in favor of supporting the order of the trial court, it is our conclusion, based upon the record herein, that no such manifest and unmistakable abuse of discretion has been shown as would justify a reversal.

The judgment is therefore affirmed.

Peters, P. J., and Ward, J., concurred.