[Civ. No. 21735. Second Dist., Div. Three. Dec. 26, 1956.]

GRANDON C. CURTIS, Respondent, v. Q. R. S. NEON CORPORATION LTD. (a Corporation) et al., Defendants; ALMAS HOUSE MOVING, INC. (a Corporation) et al., Appellants.

Kenneth J. Murphy and Henry E. Kappler for Appellants.

Harry B. Ellison and Howard E. Vleerick for Respondent.

VALLÉE, J.—Appeal by defendants from a judgment entered on a verdict for plaintiff in an action for damages for personal injuries sustained when his automobile collided with a triangular steel girder being transported on a tractor owned by defendant Almas House Moving Company and operated by defendant Stout and guided by defendant Tangen in a pilot truck. The only question is whether the trial court erred in giving and in refusing to give certain instructions to the jury; and, if so, whether the error was prejudicial.

In determining whether the instructions given are correct, we must assume the jury might have believed the evidence on which the defense—the losing party—was predicated, and if correct instructions had been given the jury might have rendered a verdict in favor of defendants. (*Clement* v. *State Reclamation Board,* 35 Cal.2d 628, 643 [220 P.2d 897].)

Defendant Almas House Moving Company, to be referred to as defendant, is a corporation engaged in the business of moving houses and oversized loads

About 5:45 a. m. on September 24, 1953 defendant was transporting two, large, triangular, prefabricated steel girders on a flat-bed tractor and semitrailer. The tractor was about 8 feet wide. Two I-beams about 23 feet in length were crosswise on the bed of the trailer. The two girders, one on top of the other, were on top of the I-beams. The widest portion of the girders was near the cab of the tractor. From point to point of the girders the load was 24 feet and 6 inches in width, making an 8-foot overhang on both sides of the trailer. The equipment weighed in excess of 25,000 pounds.

The tractor, in addition to its usual headlights, had a fixed electric red light on top of the hood. There were a total of 14 lighted red coal oil lanterns hung from various parts of the load. About 120 feet in front of the tractor a pilot or guide truck was operated by defendant Tangen. He had in his left hand a lighted red coal oil lantern with a wire handle which, he testified, he waved. The lights on the tractor and truck were burning.

Defendant was transporting the girders from Los Angeles to Lakewood and had obtained from the city of Lynwood a permit describing the route, subject to "O.K." by the police department, which showed on its face "Okay," and a permit from the city of South Gate street department, to move the load. Neither permit authorized defendant to move the load in the center of the highway.

Defendant Stout drove the tractor easterly on Imperial Highway. When it reached the intersection of Imperial and Alameda the equipment was stopped and Tangen called the police departments of South Gate and Lynwood. Stout and Tangen had the permits with them. Tangen testified that an officer informed him South Gate did not require a police escort as long as the equipment was properly lighted and as long as he had a permit. A police car from Lynwood was dispatched to the intersection. The officers examined the permits and directed Stout and Tangen to drive down the middle of the highway "so that the truck and the load would be contained within one lane of each direction, straddling that double line." The beams protruded almost out to the single white lines on either side of the double white line.

One of the officers testified the equipment was being driven

in this fashion so that traffic would be "able to move on either side of this equipment"; he did not see any red lanterns on the guide truck, nor did he see defendant Tangen wave a red lantern. The officers stayed in front of the equipment until they reached a bridge on Imperial close to the city limits of South Gate, at which point they turned off.

When the tractor reached the city limits of South Gate it was still dark. Imperial at that point was about 74 feet wide. Stout was driving to the right of the double white line in the center of the highway. About 8 feet of the load extended into the lane immediately north of the double line. Plaintiff was traveling west on Imperial in the lane near the double white line. About 70 feet in front of him, and going in the same direction, was a car driven by one Preston. Preston saw a red light, swerved to the right and avoided contact with the equipment. Almost immediately thereafter plaintiff collided with the left-hand side of the load, sustaining serious injuries. The accident occurred near the boundary line between Lynwood and South Gate. The evidence is in conflict as to whether the point of impact was in Lynwood or in South Gate. There was evidence from which the jury could have found either way. Plaintiff testified he did not see any red light other than the rear end light of Preston's car in front of him.

The court read sections 515; 525; 525.1; 525.3; 529; 694 (a), (b), (c), and (f); and 710 of the Vehicle Code to the jury.[1] The jury was then told that conduct in violation of the

---

[1]Sections 515, 525, 525.1, 525.3, 529, 694, subdivisions (a), (b) and (c) were read at the request of plaintiff; sections 694(f) and 710 at the request of defendants.

Section 515: "SPEED LAW BASED ON WEIGHT AND TIRE EQUIPMENT.

"(a) No person shall operate upon any highway any of the following vehicles when equipped entirely with pneumatic tires at any speed in excess of 40 miles per hour:

"(1) Any motor truck and trailer.

"(2) Any motor truck alone or truck tractor with semi-trailer having a gross weight, of vehicle and load or of such vehicles and load of 25,000 pounds or more.

"(b) No person shall operate upon a highway any vehicle equipped with any solid tire when such vehicle has a gross weight as set forth in the following table at any speed in excess of the speed set forth opposite such gross weight:

| When gross weight of vehicle and load is: | Maximum speed in miles per hour: |
|---|---|
| 10,000 lbs. or more but less than 16,000 lbs. | 25 |
| 16,000 lbs. or more but less than 22,000 lbs. | 15 |
| 22,000 lbs. or more | 12 |

"(c) . . ."

Section 525: "Drive on Right Side of Roadway—Exceptions.

sections constitutes negligence *per se,* subject to being over-

"(a) Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:

"(1) When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement.

"(2) When placing a vehicle in a lawful position for, and when such vehicle is lawfully making a left turn.

"(3) When the right half of a roadway is closed to traffic while under construction or repair.

"(4) Upon a roadway designated and signposted for one-way traffic.

"(b) The State Department of Public Works shall by regulation determine a distinctive roadway marking which shall indicate no driving over such marking, and is authorized either by such marking or by signs and markings to designate any portion of a state highway where the volume of traffic or the vertical or other curvature of the roadway renders it hazardous to drive on the left side of such marking or signs and marking. When such markings or signs and markings are in place, the driver of a vehicle shall not drive along the highway to the left thereof, but this shall not prevent turning to the left across any such markings at any intersection or private driveway.

"(c) It is unlawful to drive any vehicle upon any highway which has been divided into two or more roadways by means of a physical barrier or by means of a dividing section of not less than two feet in width delineated by curbs, lines or other markings on the roadway except to the right of such barrier or dividing section, or to drive any vehicle over or across any such dividing section, or to make any left turn or semi-circular or U-turn on any such divided highway, except in a crossover or intersection."

Section 525.1: "Driving in Right Hand Lane. Upon all highways any vehicle proceeding at less than the normal speed of traffic thereon shall be driven in the right-hand lane for traffic or as close as practicable to the right-hand edge or curb, except as otherwise provided in Section 525 of this Code."

Section 525.3. "CERTAIN VEHICLES TO BE DRIVEN IN RIGHT-HAND LANE.

"When any vehicle included in Section 515 is being driven on any highway, it shall be driven in the right-hand lane for traffic or as close as practicable to the right edge or curb, except when overtaking and passing another vehicle proceeding in the same direction or when preparing for a left turn at an intersection or into a private road or driveway. Vehicles included in this section when overtaking and passing another vehicle shall use the lane to the immediate left of the right-hand lane for traffic, except when overtaking and passing to the right of another vehicle as permitted under the provisions of this code."

Section 529: "When overtaking on the Right is Permitted.

"(a) The driver of a motor vehicle may overtake and pass to the right of another vehicle only under the following conditions:

"(1) When the vehicle overtaken is making or about to make a left turn.

"(2) Upon a city street with unobstructed pavement of sufficient width for two or more lines of vehicles in each direction.

"(3) Upon a one-way street.

"(4) Upon any highway outside of a city with unobstructed pave-

come by a showing that the conduct was excusable or justifi-

ment of sufficient width and clearly marked for four or more lines of moving traffic.

"(5) Upon a highway divided into two roadways where traffic is restricted to one direction upon each of such roadways.

"(b) The driver of a motor vehicle may overtake and pass another vehicle upon the right only under conditions permitting such movement in safety. In no event shall such movement be made by driving off the paved or main traveled portion of the roadway.

"(c) The provisions of this section shall not relieve the driver of a slow moving vehicle from the duty to drive as closely as practicable to the right-hand edge of the roadway."

Section 694, subdivisions (a), (b), (c), and (f): "(WIDTH OF VEHICLES).

"(a) The total outside width of any vehicle or the load thereon shall not exceed 96 inches, except as otherwise provided in this section.

"(b) When any vehicle is equipped with pneumatic tires the maximum width from the outside of one wheel and tire to the outside of the opposite outer wheel and tire shall not exceed 100 inches, but in such event the outside width of the body of such vehicle or the load thereon shall not exceed 96 inches.

"(c) When any vehicle carries a load of loosely piled agricultural products such as hay, straw, or leguminous plants in bulk but not crated, baled, boxed or sacked, such load of loosely piled material and any loading racks retaining the same shall not exceed 120 inches in width. . . .

"(f) Any city organized under a freeholders' charter may by ordinance permit a total outside width of vehicle and load in excess of the limits set forth in this section when such vehicle is used exclusively within the boundary limits of such city."

Section 710: "PERMITS FOR INCREASED SIZE, WEIGHT, ETC.

"(a) The State Department of Public Works with respect to highways under its jurisdiction and local authorities with respect to highways under their jurisdiction may at their discretion upon application in writing and if good cause appears issue a special permit in writing authorizing the applicant to operate or move a vehicle or combination of vehicles or special mobile equipment of a size or weight of vehicle or load exceeding the maximum specified in this code, or to use corrugations on the periphery of the movable tracks on a traction engine or tractor the propulsive power of which is not exerted through wheels resting upon the roadway but by means of a flexible band or chain, or, under emergency conditions, to operate or move a type of vehicle otherwise prohibited hereunder, upon any highway under the jurisdiction of the party granting such permit and for the maintenance of which said party is responsible.

"(b) The application for any such permit shall specifically describe the vehicle or vehicles and load to be operated or moved and the particular highways over which permit to operate is requested, and whether such permit is requested for a single trip or for continuous operation.

"(c) The State Department of Public Works or local authority is authorized to issue or withhold such permits at its discretion; or, if such permit is issued, to limit the number of trips, or to establish seasonal or other time limitations within which the vehicle or vehicles described may be operated on the highways indicated, or otherwise to limit or prescribe conditions of operation of such vehicle or vehicles, when necessary to assure against undue damage to the road foundations, surfaces or structures, and may require such undertaking or other security as may be deemed necessary to protect the highways and bridges from injury, or to provide indemnity for any injury resulting from such operation."

able.[2] This was followed by another instruction to the effect that a violation of law is of no consequence unless it was a proximate cause of an injury suffered by the plaintiff. Judgment was for plaintiff. Defendants appeal.

First, defendants assert the court erred in reading sections 525, 525.1, and 525.3[3] to the jury and stating that violation of these sections constituted negligence *per se.*

The court first read section 515, which provides that vehicles of specified weight and tire equipment shall not be operated in excess of designated speeds. It then read section 525.3, which in essence provides that vehicles included in section 515 shall be driven in the right-hand lane or as close as practicable to the right edge or curb.[4] It then read section 525.1, which provides that vehicles proceeding at less than normal speed of traffic shall be driven in the right-hand lane. This was followed by section 525 which states that a vehicle shall be driven on the right half of the roadway except under certain conditions.

 Section 525 is not applicable where vehicles are passing each other going in opposite directions. (*Mathers* v. *County of Riverside,* 22 Cal.2d 781, 784 [141 P.2d 419] ; *Morrison* v. *Jose,* 57 Cal.App.2d 795, 801 [135 P.2d 586].) Sections 525, 525.1, and 525.3 contain the identical language: "when overtaking and passing another vehicle proceeding in the same direction." Each of these sections applies only to vehicles traveling in the same direction and not to those proceeding in opposite directions. (See *Lewis* v. *Western Truck Line,*

---

[2] "Conduct which is in violation of . . . 515, 525, 525.1, 525.3, 529, . . . 694, subdivisions (a), (b), (c), (f) ; 710 of the Vehicle Code just read to you constitutes negligence per se. This means that if the evidence supports a finding, and you do find, that a person did so conduct himself, it requires a presumption that he was negligent. However, such presumption is not conclusive. It may be overcome by other evidence showing that under all the circumstances surrounding the event, the conduct in question was excusable, justifiable and such as might reasonably have been expected from a person of ordinary prudence. In this connection, you may assume that a person of ordinary prudence will reasonably endeavor to obey the law and will do so unless causes, not of his own intended making, induce him, without moral fault, to do otherwise."

[3] All references are to sections of the Vehicle Code.

[4] The phrase "and as close as practicable to the right-hand curb or edge of," was deleted from section 525 in 1945. (Stats. 1945, ch. 493, p. 990, § 1.) However, when section 525.1 was added to the code in 1947, (Stats. 1947, ch. 788, p. 1879, § 7) the phrase "or as close as practicable to the right-hand edge or curb" was included in the section, and when section 525.3 was added in 1953, (Stats. 1953, ch. 421, p. 1671, § 1) the phrase "or as close as practicable to the right edge or curb" was included in that section.

44 Cal.App.2d 455, 468 [112 P.2d 747].) ▉ It was error to give the instructions based on sections 525, 525.1, and 525.3 as those sections are not applicable to the facts at bar. The vehicles involved were traveling in opposite directions. Neither party requested that section 527, which applies to vehicles proceeding in opposite directions, be read to the jury, nor was it instructed thereon.[5] (*Bennett* v. *Chandler*, 52 Cal.App.2d 255, 263 [126 P.2d 173]; see *People* v. *Kiss*, 125 Cal.App.2d 138, 143 [269 P.2d 924]; *Morrison* v. *Jose*, 57 Cal.App.2d 795, 801 [135 P.2d 586].)

▉ Defendants' second assignment of error is that the court erred in reading section 529, which states the conditions when a driver may overtake and pass to the right of another vehicle. Plaintiff argues the instruction was given because paragraph (c) thereof provides that the provisions of the section shall not relieve the driver of a slow-moving vehicle from the duty to drive as closely as practicable to the right-hand edge of the roadway. This section applies to vehicles traveling in the same direction and not in opposite directions.

▉ The evidence is uncontradicted that as defendants were driving easterly on Imperial they were not attempting to pass any other vehicle driven in the same direction. The instruction was not applicable to the facts and should not have been given.

Defendants next contend the court erred in reading subsection (a) of section 694. It is argued that although subsection (f) was read at their request there was no reason to read subsection (a) in view of the evidence that the oversized load was being carried pursuant to permits from the authorities.

▉ The object of section 694, subdivision (a), is to restrict the width of loads to reasonable limits so that such loads shall not protrude over the center line of a highway or over other traffic lines in such a way as to interfere with other vehicles which are in their proper places and are properly using the

---

[5]Section 527 reads: "PASSING VEHICLES PROCEEDING IN OPPOSITE DIRECTIONS.

"(a) Drivers of vehicles proceeding in opposite directions shall pass each other to the right, and, except when a roadway has been divided into traffic lanes, each driver shall give to the other at least one-half of the main traveled portion of the roadway whenever possible.

"(b) Whenever upon any grade the width of the roadway is insufficient to permit the passing of vehicles approaching from opposite directions at the point of meeting, the driver of the vehicle descending the grade shall yield the right of way to the vehicle ascending the grade and shall if necessary back his vehicle to a place in the highway where it is possible for the vehicles to pass."

other parts of the highway. (*Albania* v. *Kovacevich,* 44 Cal. App.2d 925, 928 [113 P.2d 251].)

■ An act or failure to act in violation of a statute is negligence as a matter of law. ■ Circumstances of emergency or unusual conditions may be shown to excuse or justify the violation. ■ Unless and until excuse or justification appears, the general rule applies and the violation must be treated as negligence *per se.* ■ Each violation must be considered in connection with the surrounding circumstances. ■ Ordinarily the excuse or justification presents a question of fact for the jury. ■ Here, the instruction relative to negligence *per se* stated that the violation of section 694(a) may be explained by circumstances surrounding the event. The court read subdivision (f), which qualified the effect of subdivision (a). There was no error in reading subdivision (a) of section 694.

■ The fourth claimed error was the reading of section 515 which specifies speed limits based on weight and tire equipment. Plaintiff concedes the only reason this instruction was given was to make section 525.3 applicable, in that the latter section provides that when a vehicle included in section 515 is being driven on the highway it shall be driven in the right-hand lane or as close as practicable to the right edge or curb, with certain exceptions. As noted, section 525.3 applies to vehicles traveling in the same direction and not in opposite directions. There is no evidence to warrant an inference that the tractor was driven in excess of any of the speed restrictions set forth in section 515. Section 515 should not have been read.

■ Finally, defendants contend the court erred in refusing to instruct the jury that if a vehicle is driven on the right half of the roadway no violation of section 525 results from the mere fact that the load extends across the center line.[6] Since section 525 applies only to vehicles traveling in the same direction, the court was correct in refusing to give the instruction. Furthermore, the instruction was inapplicable to the facts. The evidence was uncontradicted that the vehicle was driven in the center of the highway, not on the right half.

---

[6]The refused instruction reads: "California Vehicle Code Section 525 provides that upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway with certain exceptions not applicable in this situation.

"However, if the vehicle itself is driven on the right half of the roadway the fact that the load thereon extends across the center line to the left half of the roadway does not result in a violation of this code section."

There remains the question whether reading sections 515, 525, 525.1, 525.3, and 529 to the jury, together with the instruction that conduct in violation of any one of the sections constituted negligence *per se* subject to being overcome by a showing that the conduct was excusable or justifiable, was prejudicial.

■ A judgment may not be set aside on the ground of misdirection of the jury unless, after an examination of the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice. (Const., art. VI, § 4½.)

■ The facts were fully developed. It is not contended the evidence does not support the verdict. There is substantial evidence that defendants were negligent. The court instructed the jury with respect to negligence, proximate cause, and contributory negligence. Obviously the jury found defendants were negligent and plaintiff was not contributorily negligent. When the instructions are read as a whole, it is manifest the jury was fully, fairly, and correctly charged on all basic issues. Under such circumstances any minor error that may have occurred in the instructions cannot and should not be held to have been prejudicial. (*Florine* v. *Market St. Ry. Co.*, 64 Cal.App.2d 581, 586 [149 P.2d 41].) Regardless of the requirements of sections 525, 525.1 and 525.3 defendants were clearly negligent in moving the equipment with 8 feet of overhang north of the center line and we think the jury undoubtedly would have found negligence for that reason. Although some of the instructions complained of were erroneous under the circumstances of this case, it cannot be said the errors resulted in a miscarriage of justice. (*Lewis* v. *Western Truck Line,* 44 Cal.App.2d 455, 468 [112 P.2d 747] ; *Bennett* v. *Chandler,* 52 Cal.App.2d 255, 263 [126 P.2d 173] ; *Morrison* v. *Jose,* 57 Cal.App.2d 795, 803 [135 P.2d 586].)

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 19, 1957.